## NASELLI v. MILLHOLLAND.

### No. 10635.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 22, 1950.

Decided March 1, 1951.

Meredith M. Daubin, Washington, D. C., for appellant.

John H. Burnett, Washington, D. C., with whom Leonard A. Block and Chapin B. Bauman, Washington, D. C., were on the brief, for appellee.

Before WILBUR K. MILLER, PRET-TYMAN and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The parties to this appeal, who are half-sisters, are daughters of the late Harry Wardman, who was an extensive real estate operator in the District of Columbia.

On February 11, 1931, the appellee (defendant) executed, acknowledged and delivered the following declaration of trust:

"Living Trust

"Alice Rheem to Harry Wardman, Trustee for Benefit of Alice Rheem and Helen Wardman.

"I, Alice Rheem, residing in the City of Washington, District of Columbia, United States of America, hereinafter called the 'donor' have, in consideration of One Dollar and other valuable considerations receipt of which is acknowledged, irrevocably assigned, sold, transferred and delivered and by these presents do transfer and deliver unto Harry Wardman of Washington, District of Columbia, hereinafter called the 'trustee' all the following described property, to wit:

"Thirteen Thousand Five Hundred and Fifty (13,550) ordinary shares of One Pound each of Park Lane Hotel, Ltd., of London, England.

"To have and to hold the same

"In trust nevertheless, for the following uses and purposes and subject to the following terms, conditions and powers hereinafter set forth, that is to say

"First: To hold, manage, sell, invest and reinvest the same and collect the income and with full power and authority to vote the above shares in any corporate matter and also any shares or property in which the corpus of this trust shall be invested, as he shall deem best in his uncontrolled discretion.

"Second: To pay the net income at such period or periods as shall appear practicable; one-half to my half sister, Helen Wardman, one-half to Alice Rheem, the donor.

"Third: The property forming this trust estate shall be distributed one-half to the natural heirs of Alice Rheem and one-half to the natural heirs of Helen Wardman at the time of the death of each beneficiary of this trust estate.

"Fourth: I hereby notify Park Lane Hotel, Ltd. I have irrevocably assigned and transferred the share capital standing

in my name to Harry Wardman, as Trustee for the purposes as above set out.

"In witness whereof, I have hereunto set my hand and affixed my seal this *11th* day of *February 1931*

        "/s/ ALICE RHEEM (Seal)"

Harry Wardman died March 18, 1938. More than nine years later, on September 16, 1947, the appellant, Mrs. Naselli, sued Mrs. Rheem (Millholland) in the United States District Court for the District of Columbia to obtain the appointment of a successor trustee. Mrs. Rheem defended upon several grounds, including that of laches, and in her answer explained the execution of the trust instrument and some subsequent events thus:

"In the years 1928 to 1931, inclusive, and thereafter, both the husband and said father of defendant were in financial difficulty and defendant signed many papers for each of them, of which she has no independent recollection. On or about February 11, 1931, said Wardman told defendant that he wanted her to come to his office to execute a paper in order that he might raise some money. The said alleged trust agreement was, for the first time, then presented to defendant for her signature. Defendant then had no business experience. She depended solely on the advice and instructions of her said husband and father in signing papers presented to her by either of them. She did not read the said alleged trust agreement of February 11, 1931, and was not made acquainted with the contents thereof. She was not given a copy thereof. She did not know and was not told of the legal effect and the meaning thereof. Depending solely on the representations, advice and instructions of her said father, defendant signed her name and acknowledged her signature to said alleged trust agreement.

"From the date of said alleged trust agreement to the date hereof the terms of said trust agreement were not enforced nor carried out. To the contrary, said Wardman continued to advise this defendant that she was the sole owner of said stock. On November 10, 1936, said Wardman wrote to the managing director of said Park Lane Hotel Limited and requested that a certificate for 13,550 shares of stock be issued by said corporation to this defendant. On November 17, 1936, said certificate for said shares of stock was mailed to said Wardman from London, England. Shortly after the receipt thereof by said Wardman in this District, the same was turned over to this defendant by said Wardman. This defendant has retained possession of the same since said time."

Being of the opinion that Mrs. Naselli had been guilty of laches, the trial judge dismissed her complaint, 89 F.Supp. 943. She appeals.

Excerpts from correspondence which is in the record will aid in developing the unusual facts of this case. On October 6, 1928, Harry Wardman wrote to the defendant the following letter, which a notary public certified had been subscribed and sworn to before him:

"This is to confirm the fact that I hold 20,000 shares in the Park Lane Hotel, Ltd., for you, the same being recorded in my name, which I shall transfer to you in exchange for your stock in the Wardman Park Hotel.

"The certificates are now in London and I shall issue instructions to make the transfer of the stock on the books to you and to deliver to you the new certificates."

Wardman did not, however, take immediate steps to cause the Park Lane Hotel shares to be transferred to the defendant for, seven months later (May 22, 1929), he wrote to the managing director of the Park Lane Hotel:

"My daughter, Mrs. Rheem, is sailing for London on the Majestic next week, and upon her arrival, she will call to see you.

"You will recall that when you were in Washington I told you I was going to exchange my shares in the Park Lane for the stock of the Wardman Park Hotel which was held by Mrs. Rheem.

"Mrs. Rheem some time ago turned over her stock to me, and now I want you to transfer my shares in the Park Lane to her, Alice Wardman Rheem, and deliver the same to her.

"A copy of this letter has been delivered to Mrs. Rheem."

Mrs. Rheem did not obtain a certificate for the Park Lane shares while she was in London. Nevertheless her father regarded her as the owner of them as he thereafter "borrowed" from her for use as collateral approximately one-third of the 20,000 shares. This is evidenced by his letter to the defendant dated October 25, 1929:

"In accordance with our conversation when I asked you to loan me your 6666 shares of the capital stock of the Park Lane Hotel, this is to confirm my verbal promise to secure you for this stock which you loaned to me to be used as collateral on a personal loan of $80,000 I was securing."

For some reason Wardman took only 6,450 shares, leaving 13,550 shares which were transferred to the defendant on the books of the corporation in the year 1930.

Seemingly Wardman did not know this transfer had been accomplished, for on November 10, 1936, he wrote to the managing director of the London hotel: "I think it would be best if you will issue Alice W. Rheem her shares and mail them to her, I want her to have the shares listed on your books in her name, * * *" The pertinent portion of the managing director's response, dated November 17, 1936, follows:

"I received your letter of November 10th, and am sorry to hear that the result of the Election has caused your plans to be changed, and I hope it will not be for the worse.

"I am enclosing herewith Share Certificate No. 158 for 13,550 Ordinary Shares, which you will see has been in the name of Mrs. Alice Rheem since 1930."

Wardman never attempted to perform his duties as trustee. He did not obtain the issuance of a certificate to himself in his fiduciary capacity but, five years after the declaration of trust was executed, he instructed the Park Lane Hotel to issue a certificate to Mrs. Rheem and deliver it to her. Moreover, the parties stipulated at the trial.

"* * * That Mr. Wardman, as trustee, never received any income whatsoever from this alleged trust; that the plaintiff never received any income from this alleged trust; and that the defendant, Mrs. Millholland, has retained all of the income from the stock at all times, and has never given anyone any portion of it, that is, either Mr. Wardman or the plaintiff here."

The certificate issued to the defendant has never been transferred by her, so since 1930 the defendant has been the record owner of 13,550 shares, has had custody of the certificate therefor, and has received and treated as her own all dividends therefrom, which at times have been substantial in amount.

Although the plaintiff learned in February, 1931, that her father had become trustee under an indenture of trust which required him to pay to her one-half the income from these shares of stock, she not only did not receive any income from the trust estate during the remaining seven years of her father's life, but also took no action to obtain it.

But, a few days after Wardman's death, which we have seen occurred on March 18, 1938, the plaintiff became active. She and her husband called on the defendant, showed her a copy of the trust agreement, and demanded that she consent to the appointment of a successor trustee. Mrs. Millholland responded that she did not know anything about the paper and added, "I haven't made up my mind yet but I am going to someone who can give me the very best counsel possible."

Within a few days after this conversation and on March 29, 1938, R. Golden Donaldson, attorney for the plaintiff, wrote to the defendant advising her that the plaintiff had told him about the shares of a certain stock which were the subject of a subsisting trust agreement and had given him a power of attorney to act for her with respect to it. He inquired when he might take the matter up with her. Under date of March 31, 1938, the defendant wrote a letter to Donaldson which included this sentence: "I am not aware of any sub-

sisting trust agreement, however, I will arrange to engage counsel who will communicate with you."

Then, on April 7, Paul E. Lesh, as attorney for the defendant, wrote to Donaldson saying: "Your letter refers to shares of a 'certain stock which is the subject of a subsisting trust agreement'. Mrs. Rheem is not aware of any subsisting trust agreement and is not disposed to countenance any claim of her sister to any stock, and on Mrs. Rheem's behalf we must therefore take the position that if her sister is so disposed, she may proceed to assert her claim as she may be advised." Donaldson responded on June 9, 1938, advising: "* * that Countess Naselli insists, on her own behalf and on account of her child, if she should have one, that the trust agreement executed by Mrs. Rheem on February 11, 1931, relating to said stock, is in full force and effect, and that she will hold Mrs. Rheem personally liable for the fulfillment of the provisions of said trust agreement, including an accounting for all dividends received upon the said stock by Mrs. Rheem since the execution of said trust agreement." Lesh wrote on June 15, 1938: "In reply we must reiterate the denial of the asserted obligation made in our letter of April 11 [7], 1938."

Mrs. Naselli did not even make a demand upon her half-sister until after the death of Harry Wardman, who knew most about the transaction. After the exchange of letters in 1938 in which she learned of the defendant's unequivocal repudiation of the trust agreement, she did nothing to obtain the appointment of a successor trustee until she filed this suit on September 16, 1947, more than nine years later. In the meantime Donaldson and Lesh, the attorneys who conducted the correspondence for the parties, died. In these circumstances, we think the District Court correctly held that the plaintiff's laches prevented her from maintaining this suit for the appointment of a successor trustee. If the action be considered as one to enforce the provisions of the trust agreement (the District Court seems to have so regarded it and, by intendment at least, that was its real purpose) it cannot be maintained by a plaintiff who, after a repudiation of the trust by a defendant such as occurred here, has slept on her rights so long before attempting to enforce them. Patterson v. Hewitt, 1904, 195 U.S. 309, 25 S. 35, 49 L.Ed. 214; McCallum v. Anderson, 10 Cir., 1945, 147 F.2d 811; Reed v. Fairmont Creamery Co., 8 Cir., 1929, 37 F.2d 332; Mason v. MacFadden, 8 Cir., 1924, 298 F. 384; Restatement, Trusts § 219.

We observe, of course, the provision of the declaration of trust that at the death of either beneficiary, her natural heirs, i. e. her children, shall receive one-half of the corpus. No child has been born to either sister. What the rights of unborn children are in this situation and how they are to be protected are questions which are not before us and about which we express no opinion. Those and other problems suggested by the situation remain open for solution when presented by a litigant qualified to raise them. We hold no more than that the plaintiff is barred by laches from maintaining this suit for the appointment of a successor trustee or for the enforcement of the trust.

Affirmed.