Andrew SZUCH, Plaintiff,

v.

John L. LEWIS, Josephine Roche, & Henry G. Schmidt; Trustees of the United Mine Workers of America Welfare and Retirement Fund, Defendants.

Civ. A. No. 394.

United States District Court
District of Columbia.

Dec. 15, 1960.

832

Sheldon E. Bernstein, Washington, D. C., for plaintiff.

Edward L. Carey, Val J. Mitch, Charles L. Widman, Washington, D. C., for defendants.

TAMM, District Judge.

Andrew Szuch brings this action to require payment to him of a pension from a trust fund set up by the National Bituminous Coal Wage Agreement of 1950 and administered by defendant trustees. Plaintiff alleges, and defendants deny, that plaintiff meets the requirements for such pension as set up by the trustees in their Resolution Number 10. (Plaintiff's complaint alleges that he is qualified under trustees' Resolution No. 20, which varies somewhat from Resolution No. 10, which plaintiff introduced as his Exhibit one and which he now appears to rely upon. Resolution No. 20 is applicable to the 1947 Coal Wage Agreement trust fund.)

Plaintiff was injured in a mining accident in February, 1941 and remained on workmen's compensation until February, 1949. To qualify for a pension, plaintiff must have, according to the terms of Resolution No. 10, "retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946 and have been employed for a period of at least one year in the Bituminous Coal Industry immediately preceding his retirement." Plaintiff contends that his status as an employee of the C. A. Hughes Co., in whose mine he was injured, was not altered by his receipt of workmen's disability compensation and that such status, therefore, continues until February, 1949.

Plaintiff made application for a pension on October 24, 1950. It was denied on March 14, 1951, and suit was filed February 11, 1959.

The first question presented is whether plaintiff's action is barred by the statute of limitations or by laches.

"* * * and no action the limitation of which is not otherwise specially prescribed in this section shall be brought after three years from the time when the right to maintain such action shall have accrued." Title 12, § 201, D.C.Code.

The question of the applicability of this section is not affected by the question of whether plaintiff's cause of action arose when he became eligible for a pension, or when the trustees refused the pension, since his action was filed more than three years after each event. In considering laches or the statute of limitations, the nature of the right plaintiff seeks to enforce is important.

The nature of the rights of would-be pensioners under the United Mine Workers' pension fund has been interpreted in two different manners by this Court, i. e., as a contractual right and as an equitable right as beneficiary of a trust. The right was held to be contractual in Hobbs v. Lewis et al., D.C.1958, 159 F.Supp. 282, 287, (Pine, J.). In this case, the Court felt that the one seeking a pension does so as a third-party beneficiary to the Coal Wage Agreement and that when he meets the requirements set up by the trustees, he has a contractual right to a pension. The Court further held that the action of the trustees in denying a plaintiff's eligibility was reviewable by the Court even in the absence of fraud or bad faith. Following this view, the Court said:

"It thus becomes unnecessary to discuss the defense of the statute of limitations, also raised as a defense because the payment of a pension is a continuing obligation and no back

payments before institution of suit are included in the findings herein, for the reasons stated."

In Kennet v. United Mine Workers, D.C.1960, 183 F.Supp. 315, (Holtzoff, J.), the Court adopted the contractual view. The Court there, feeling that the right to a pension when the eligibility requirements are met is part of the compensation of a coal worker, stated that the employee has a right to enforce the contract as a third-party beneficiary. In this case, the question of the statute of limitations was not raised, but the area of judicial review was held to be "erroneous decisions of the trustees as to questions of law and to a limited extent as to questions of fact." The Court would also review to determine if substantial evidence supported the decisions of the trustees and to determine that the acts of the trustees were not arbitrary or capricious.

Van Horn v. Lewis, D.C.1948, 79 F. Supp. 541, (Goldsborough, J.) contains dicta that the trust fund set up under the 1947 Coal Wage Agreement was a charitable trust. This view was followed in Ruth v. Lewis, D.C.1958, 166 F.Supp. 346 (Youngdahl, J.). The Court in this case held the plaintiff to be in the position of the beneficiary of a noncharitable trust and not the holder of a contractual right. The Court's function was held to be to determine if the trust was operated within the terms of the agreement, if the benefits were properly distributed in order to protect beneficiaries from arbitrary and capricious action, and to insure the proper administration of the fund by the trustees.

The United States Court of Appeals for the District of Columbia has not considered this question, but in Lewis v. Benedict Coal Corp., 6 Cir., 1958, 259 F.2d 346, the Court held the pension trust to be similar in some respects to charitable trusts. It was held that as in a true charitable trust the actual beneficiaries of the fund are not ascertainable. Present employees, who are potential beneficiaries, may have a present "interest" such as to enforce compliance with statutory requirements for the administration of the fund, but the Coal Wage Agreement did not contemplate vesting an employee with a present interest in the trust's res.

■ This Court adopts the view of Judge Youngdahl in Ruth v. Lewis, supra, and of the Court of Appeals of the Sixth Circuit. The language of the Coal Wage Agreement clearly sets out the establishment of a trust fund for the payment of pensions and other benefits, with discretion in the trustees to establish the detailed basis for payment from the fund.

"Trustees shall have full authority, within the terms and provisions of the Labor Management Relations Act * * * with respect to questions of coverage and eligibility, * * *" National Bituminous Coal Wage Agreement of 1950.

As in a charitable trust, this trust has a fund set up for the benefit of a specific group of beneficiaries—not all of whom will benefit. The trustees in exercise of their discretion established requirements which raise the individual beneficiary from the unascertained group. The trustees may change these requirements and must interpret them. Resolution No. 40 is an example of such action. It is difficult to see how a basis for a contractual right can be found prior to the time a pension is awarded. The third-party beneficiary theory is applicable to labor contracts, but it seems that the only contractual rights to be enforced here are that the trustees should administer this fund for the stated purposes and within the bounds of proper fiduciary discretion. The requirements established by the trustees have undoubtedly left many persons who were employed in the coal industry when this contract was negotiated and signed without any conceivable basis for claiming a pension, yet it would be difficult to find that any of them had a contractually-based right to seek a pension. The same theory is applicable to the view that this pension fund is part of compensation that is set up under the 1950 Agreement. It would be especially difficult to find a contractual right for this plaintiff since he has not performed any

actual labor in the coal industry since 1941.

As a member of a group who are the real third-party beneficiaries of the Coal Wage Agreement, plaintiff may have such an interest as to allow him to enforce the contract requiring the trustees to administer the trust fund for the purpose specified and in accordance with the instructions contained in the Coal Wage Agreement, but he has no such interest as will support his claim to a pension as a contractual right.

Various law journal articles shed little light upon this question, since they follow the theory that they are dealing with a trust when the pension fund is set up as here. Many discuss a contract right to a pension, but these are pension funds wherein the requirements for eligibility for the pension are set up in the same instrument as sets up the pension fund itself. Generally these views proceed on the third-party beneficiary theory or on the proposition that the offer of a pension is accepted by employment for the stated period of time.

The right plaintiff seeks here to enforce is equitable in nature, and the pleadings of the parties do not indicate they consider it to be otherwise. Defendants cite two cases: Dillon v. Board of Pension Commissioner of the City of Los Angeles, 18 Cal.2d 427, 116 P.2d 37, 136 A.L.R. 800, and Board of Trustees of the Policemen's Pension Fund of Pueblo v. Koman, 133 Colo. 598, 298 P.2d 737, which they feel support the proposition that plaintiff's case is divisible into two parts—one legal and one equitable—and, therefore, the equity jurisdiction which this Court is called upon to exercise is "concurrent" in nature. These cases do distinguish the difference between actions seeking to enforce payment · of pension payments and actions to establish eligibility as a pensioner. They do not support the theory that plaintiff's case should be divided into legal and equitable actions.

Pomeroy's Equity Jurisprudence, Fifth Edition, § 136, et seq., notes that the nature of equity's jurisdiction must not be confused with the relief given—a money judgment may be part of a decree where equity is exercising its exclusive jurisdiction. Exclusive equity jurisdiction is that exercised where the right sought to be enforced is purely equitable. Concurrent jurisdiction is that exercised when the right involved is legal, but the remedy at law is inadequate, and a bill in equity is brought. Trusts, both public and private, are within the area of equity's exclusive jurisdiction. Pomeroy, §§ 150 to 158.

The application of the statute of limitations in the cases where equity is exercising exclusive jurisdiction has not been ruled upon directly. However, the Court of Appeals has indicated an intent to follow the rule applicable in federal courts that in cases of concurrent jurisdiction the local statute of limitations will be applied, but in cases of exclusive jurisdiction, the doctrine of laches will apply. Cassell v. Taylor, 100 U.S.App.D.C. 153, 243 F.2d 259. The Court has applied the doctrine of laches in cases decided since the adoption of Section 12–201, District of Columbia Code: Naselli v. Millholland, 88 U.S.App.D.C. 237, 188 F.2d 1005 (1950 case involving enforcement of a trust); Libby v. L. J. Corporation et al., 101 U.S.App.D.C. 87, 247 F.2d 78 (1957 case holding laches bar to actions springing from fiduciary relationship); Benson v. Zahner, D.C.Cir., 289 F.2d 756 (action to enforce veteran's preference right in federal employment).

Defendants cite several cases in support of the proposition that the Court should apply the statute of limitations "by analogy." The cases cited are cases of concurrent equity jurisdiction or cases in which the statute of limitations was applicable to "actions at law of like character." Such is not the case here.

Plaintiff cites two cases alleging that the right to a pension is a continuing one, and therefore laches does not apply. These cases proceed on the principle that the pensioner's rights are contractual in nature. This view is not applicable to this pension fund for the reasons stated above. It would be unique to hold that

the defense of the statute of limitations is not applicable since the right to be enforced is within equity's exclusive jurisdiction and that laches is not applicable because the right is of a continuing contract nature.

▆▆▆ Mere passage of time does not constitute laches. Dollar v. Land, 87 U.S. App.D.C. 214, 184 F.2d 245. The doctrine of laches is the principle that equity will not aid a plaintiff whose inexcusable delay if the suit were allowed would be prejudicial to the defendant. Russell v. Todd, 309 U.S. 280, 60 S.Ct. 527, 84 L.Ed. 754; Major et al. v. Shaver, 88 U.S.App.D.C. 148, 187 F.2d 211. Defendants in this case have not shown how the delay of plaintiff will be prejudicial to them. Defendants do not and never have contested the essential facts of plaintiff's case. They cannot claim, therefore, that the delay has deprived them of vital witnesses or evidence. Although the amount of recovery the plaintiff now seeks would constitute a large lump sum payment from the trust, there is no evidence that it would be necessary to invade the corpus of the trust to pay it. In fact, it should be assumed that in the year plaintiff made application for his pension, the trustees had adequate funds to pay plaintiff's pension plus whatever other undetermined number of pensions they might have anticipated for that year. The same is true of subsequent years. The fact that the trustees did not pay this one pension should have resulted only in a healthier trust. Defendants have not established the defense of laches.

▆▆▆ Plaintiff, in seeking his pension, must necessarily allege that his retirement occurred in February, 1949, when he was removed from workmen's compensation and did not, or could not, resume work in the coal mining industry. This is so because of the requirements of clause 1(B), Resolution No. 10: "Retire by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946." In outlining requirements for pension eligibility, Section 1(C) of Resolution No. 10 states: "Been employed for a period of at least one year in the Bituminous Coal Industry immediately preceding his retirement." The question facing the trustees was: "Did Andrew Szuch's status for the year preceding February, 1949 meet the requirement of Section 1(C)? They ruled it did not.

"Trustees having the power to exercise discretion will not be interfered with so long as they are acting bona fides. To do so would be to substitute the discretion of the court for that of the trustees." Shelton v. King, 229 U.S. 90, 33 S.Ct. 686, 687, 57 L.Ed. 1086.

The purpose of the Court's review, then, is to establish that the trust is administered within the terms of the trust agreement and in such a way as to protect the beneficiaries from arbitrary and capricious actions. Ruth v. Lewis, supra.

The trustees in this case have complete discretion to establish the eligibility requirements for a pension. They could and in fact have changed these requirements. Upon plaintiff's application for a pension they exercised their discretion to interpret the scope of one of these requirements. Their interpretation of the clause, "employed in the Bituminous Coal Industry," was such that plaintiff's status did not fall within the requirement. There is no evidence they acted in bad faith, arbitrarily or capriciously. The fact that the Court might interpret this term in a broader sense has no bearing, since it is the discretion of the trustees that controls.

The plaintiff cannot recover.

Counsel will submit appropriate judgment, findings of fact and conclusions of law.