JENNIE BONO & others *vs.* LUKE KRAMER & others,
trustees, & another.

Suffolk.    May 6, 1963. — July 5, 1963.

Present: SPALDING, WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Trust,* Retirement trust, Trustee's powers. *Retirement. Labor.*

Rules adopted by the trustees of a retirement fund for union members
pursuant to a provision of the trust instrument directing the trustees
to adopt rules "governing eligibility for and the nature, amount and
duration of benefits," and determinations by the trustees under the rules,
were not to be disturbed by the courts in the absence of proof that the
trustees acted arbitrarily, capriciously or in bad faith.   [360]

Under a trust agreement establishing a retirement fund for the members
of a union and conferring upon the trustees of the fund "full authority
to determine all questions as to eligibility for and the nature, amount
and duration of benefits" from the fund and to "adopt rules . . . gov-
erning" such subjects, where it appeared that a member of the union
employed by a company for many years had become disabled by illness
from working before the company became a party to the trust agree-
ment and had died without recovering from the disability and without
resuming work after the company had become a party to that agreement
and the trustees thereof had adopted rules governing eligibility to bene-
fits from the retirement fund, and that he had remained an employee
of the company and a member of the union until his death, persons
claiming through him were precluded from receiving any benefits by
reason of a requirement of such rules in effect that an employee dis-
abled from working at the time his employer became a party to the
trust agreement must request "reinstatement to employment . . . within
one month after recovery and . . . [after reinstatement continue] em-
ployment for a minimum of eight consecutive weeks" before he would
obtain rights in the fund.   [359–361]

BILL IN EQUITY filed in the Superior Court on April 30,
1959.

The suit was heard by *Barron, J.*

*Edmund L. Twomey* for the defendants.

*Reuben Goodman* for the plaintiffs.

REARDON, J.   The defendants, trustees of the Local 380
Retirement Fund (the Fund), appeal from a decree order-

ing payment from the Fund to the three plaintiffs of $1,500 each with interest. The plaintiffs are the widow and two minor children of Frank Bono. The parties stipulated to certain facts.

Frank Bono died on March 14, 1957, after an illness which hospitalized him and precluded him from work from November 4, 1956. He had been continuously employed as a route driver by the codefendant National Dairy Products Corporation (the Company) and its predecessor, General Ice Cream Corporation, for thirty-two years. Until his death he was a member of the Milk Wagon Drivers' & Creamery Workers' Union, Local 380, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America (the Union). On or about January 28, 1957, the Company and the Union signed a contract which provided, inter alia, "that the company shall contribute four dollars ($4.00) per week for each person employed within the categories covered within the agreement who receives compensation for the week or any portion thereof into the Local 380 Retirement Fund." Route drivers was a category covered pursuant to a collective bargaining agreement between the Company and the Union then in existence and operation. The Fund was established by an agreement and declaration of trust dated November 30, 1956, and originally entered into by the Union and various milk firms. In accordance with the contract dated January 28, 1957, the Company and the trustees executed a counterpart of the agreement and declaration of trust effective December 15, 1956. In addition, on or about January 10, 1957, the trustees in a writing entitled, "Local 380 Retirement Fund Rules of Eligibility," adopted rules and regulations governing the administration of the Fund.

During the terminal illness of Frank Bono, the Company paid him a weekly sum representing the difference between his group insurance payments and 85% of his weekly earnings, contributed one half of his Blue Cross-Blue Shield payments through March, 1957, and paid its proportionate share of payments due for him under a group life insurance

plan insuring employees of the Company. Throughout the period of his last illness his union dues were deducted from payments made to him by the Company and were forwarded to the Union. Until his death Bono remained an employee of the Company and had he been able to return to work would have retained his seniority rights.

The Company made its first payment to the Fund on March 15, 1957, including therein weekly payments of $4 on behalf of Frank Bono, but these payments on his account were returned by the defendant trustees of the Fund who refused to accept the payments. The reason given by the trustees for such rejection was that ''no contribution was required in behalf of any employee except that the employee had actually worked a proportion of the week or had been on vacation.'' Upon his death the plaintiffs made timely application for payment of a total benefit accrual, appropriate to the decedent's years of service at death, as set forth in the Fund rule, but the trustees rejected the application.

The trust agreement provided that the Fund was to be administered by a board of six trustees, three to be representatives of the Union and three to be appointed jointly by the various employer signatories to the agreement.

It provided further:

''Article V. Plan of Benefits

''1. The Trustees shall utilize the Fund to provide retirement benefits for the members of the Union employed by an Employer who is a party hereto, which benefits may, under such rules and regulations as the Trustees may establish, be payable to dependents and beneficiaries of an employee. The Trustees shall have full authority to determine all questions as to eligibility for and the nature, amount and duration of benefits to be provided hereunder, provided however that no benefits other than retirement and death benefits may be provided under this Trust Agreement.

''2. The Trustees shall adopt rules and regulations

governing eligibility for and the nature, amount and duration of benefits hereunder. Copies of such rules and regulations shall be furnished to the Union and to each Employer.''

"Article VIII.   Miscellaneous

"1.   No employee of any Employer covered hereby or any person claiming by or through such employee shall have any right, title or interest in or to the Fund or any property of the Fund except such right as he or any person claiming by or through him may have to receive retirement or death benefits under the Plan adopted by the Trustees.''

The rules adopted by the trustees for the Fund provided in part:

"Article II

Types of Pensions, Eligibility and Amounts

. . .

"Section 2.   Amount of Normal Pension

"The Normal Pension shall be a monthly annuity payable for ten years certain and life determined as the actuarial equivalent of the total benefit accrual indicated for the Employee's years of service at the time of Retirement as follows:

| Years of Service | Total Benefit Accrual |
|---|---|
| . . . | |
| 30–34 | 4500 |
| | . . . |

(hereafter the term 'Total Benefit Accrual' shall mean the amounts set forth in the above table).''

"Article III

Payments on Death

"Section 1.   Before Retirement

"If before retirement an Employee dies after completing ten or more years of credited service, then the Total Benefit Accrual, appropriate to the Employee's years of service

at death, shall be paid to the beneficiary under options similar to those available to an Employee at retirement.''

"Article IV

Accumulation of Pension Credits

. . .

"Section 2.   Service and Service Credit

. . .

"(d)  An employee on disability leave on the date of unit inclusion shall be deemed to be an employee within the unit on such date if reinstatement to employment is requested within one month after recovery and if such an employee when reinstated continues employment for a minimum of eight consecutive weeks.''

"Article V

Benefit Payment

. . .

"Section 3.   Action by Trustees

"The Trustees shall be the sole judges of:

"(a)  the standard proof required in any case;

"(b)  the application and interpretation of these rules and regulation

"(c)  entitlement to or amount of benefit

"(d)  crediting of past or future service credits; and

"the Trustees' decisions with respect to the foregoing shall be final and binding on all persons.   Whenever the Trustees are granted discretionary powers, the same shall be exercised in a uniform and non-discriminatory manner.''

The Company joined with other firms engaged in the distribution of milk and the Union in establishing a retirement plan for its employees in accordance with the provisions of § 302 (c) (5) of the Labor Management Relations Act, 29 U. S. C., § 186 (c) (5).   The plan was defined in three documents:  (1) the collective bargaining agreement, (2) the trust agreement, and (3) the retirement fund rules of eligibility.   They are to be accorded joint consideration

in reviewing the scope of the authority of the trustees and the propriety of their actions. See *Stern* v. *Stern,* 330 Mass. 312, 317; *American Fedn. of Labor* v. *Western Union Tel. Co.* 179 F. 2d 535, 538 (6th Cir.). The trustees, three of whom were chosen by the Union, and three appointed jointly by the employers including the Company, had a primary duty to neither the employers nor the Union. They were, above all, fiduciaries charged with the government of a trust fund having as its sole beneficiaries all covered employees. See *Lewis* v. *Benedict Coal Corp.* 361 U. S. 459, 468–469; *I. L. A. Local 333* v. *Essex Transp. Co.* 216 F. 2d 410, 412 (3d Cir.). Upon the trustees was conferred "full authority to determine all questions as to eligibility for and the nature, amount and duration of benefits to be provided . . . ." By the terms of the trust instrument they were directed to "adopt rules and regulations governing eligibility for and the nature, amount and duration of benefits . . . ." We will not interfere with the actions of trustees to whom has been entrusted such extensive authority except upon clear proof that they "are abusing their authority and acting in perversion of the trust." *Leverett* v. *Barnwell,* 214 Mass. 105, 108. *Sylvester* v. *Newton,* 321 Mass. 416, 421–422. *Boston Safe Deposit & Trust Co.* v. *Johnson,* 326 Mass. 664, 666. Restatement 2d: Trusts, § 187 (comment j in particular). The broad grant of power lodged by the terms of the trust agreement relative to the adoption of rules and regulations was undoubtedly motivated by the recognized necessity of providing for the successful operation of a complex, inclusive, and important arrangement involving many employees. Determinations under the rules and regulations by the trustees as to identity of employees entitled to benefits will not be disturbed absent a showing that the actions of the trustees were arbitrary, capricious or in bad faith. *Danti* v. *Lewis,* 312 F. 2d 345, 351–352 (D. C. Cir.). *Szuch* v. *Lewis,* 193 F. Supp. 831, 835.

In art. IV, § 2 (d) of the rules and regulations which they promulgated, the trustees evidenced a desire to ward off depletion of the Fund pending the accumulation of reserves.

The trustees' actions in this matter have been consistent and in accordance with the rule. See *Needham* v. *American Bankers Assn.* 288 F. 2d 425. We are unable to perceive any action by them which contravenes the best interests of all the beneficiaries under the agreement. *American Bakeries Co.* v. *Barrick,* 162 F. Supp. 882, 884–885. The rule required the decedent to request reinstatement and to return to work for the stipulated time prior to his obtaining rights under the Fund. This he could not and did not do. The consequent misfortune of the plaintiffs which stems from the decedent's ill health at the time the plan went into effect cannot alter the fact that the trustees, in adopting and interpreting the rule as they did, acted in consonance with the fiduciary responsibilities laid upon them. *Berry* v. *Kyes,* 304 Mass. 56, 58–59. *McMahon* v. *Krapf,* 323 Mass. 118, 124. *Ruth* v. *Lewis,* 166 F. Supp. 346, 349.

*Final decree reversed.*

*Decree to be entered dismissing the bill of complaint.*