CHARLES FORBES *vs.* LUKE KRAMER & others, trustees.

Middlesex.    December 16, 1976. — June 29, 1977.

Present: KEVILLE, GRANT, & ARMSTRONG, JJ.

*Trust,* Retirement trust, Trustee's powers. *Retirement.*

Where an employees' retirement fund had become insufficient to meet the claims of all its beneficiaries, an amendment to the trust agreement establishing priorities among different classes of eligible members in the realization of their claims on the fund did not impair any vested rights of an employee who had resigned but whose benefits had not been approved for payment prior to the amendment. [478-479]

Under an amendment to a retirement trust fund agreement which established priorities among different classes of eligible members and which included for highest priority members who had terminated covered employment between certain dates and "who demonstrated to the satisfaction of the trustees that such termination of employment was not part of a plan or scheme to secure a priority or preference over other [f]und members in the allocation of [f]und assets," the trustees were not required to prove that an applicant had definite knowledge that the major employer of trust fund members was about to go out of business at the time of his termination. [479]

CIVIL ACTION commenced in the Superior Court on July 30, 1974.

The case was heard by *Cross,* J.

*William D. Barry* for the plaintiff.

*Robert J. McGee* for the defendants.

ARMSTRONG, J. The plaintiff seeks a determination of his rights to retirement benefits from a trust fund established for members of the Milk Wagon Drivers' and Creamery Workers' Union, Local 380, and an order enforcing those rights in accordance with that determination. The defendants are the trustees of the fund. The plaintiff's grievance lies with a decision rendered by the trustees on February 28, 1974, whereby they denied him priority status in his claim upon the fund, which had become insufficient

to meet the claims of all those eligible for benefits thereunder. The plaintiff appeals from a judgment upholding the action of the trustees. There was no error.

Until early 1973 the plaintiff was an employee of Whiting Milk Company (Whiting) and a participant in the retirement fund. On January 14 of that year Whiting held a meeting of its employees, attended by the plaintiff, at which it was announced that Whiting would go out of business unless its employees should agree to substantial pay cuts. At some time between January 23 and January 26 the plaintiff made an appointment at the trustees' office in order to arrange for his resignation from Whiting and his application for retirement benefits from the fund, for which he appears to have been eligible. The appointment was for February 2, at which time an employee of the trustees assisted the plaintiff in preparing a letter of resignation and an application for retirement benefits. The plaintiff delivered his resignation to his supervisor on February 3. It was to take effect February 15, and payment of his retirement benefits would normally have commenced in March, 1973.

Meanwhile, in early February, Whiting notified its employees that it would cease operations on February 17, and did so on that date. Because Whiting's employees represented over sixty percent of the membership of the trust fund, the company's demise left the fund with insufficient money to pay all the retirement benefits to which its retired members were entitled. For that reason the trustees suspended the processing of all claims (including that of the plaintiff) which had been filed after January 15, 1973, in order to devise a system of priorities among the claimants. Such a system was adopted by the trustees on October 30, 1973, in the form of an amendment to their Rules of Eligibility. On February 28, 1974, the trustees held a hearing on the plaintiff's claim and ruled that he was not eligible for priority treatment under the amended regulation, thereby remitting him to his rights as a beneficiary without priority status.

The relevant powers of the trustees under the Trust Agreement appeared in art. V thereof, and included au-

thority to determine all questions of eligibility for benefits and to adopt rules governing such eligibility.[1] Under art. VI, § 1, of the Rules of Eligibility so adopted, the trustees were empowered to amend those rules at any time, subject to the condition "that no amendment may reduce any pension benefits which have been approved for payment prior to such amendments, so long as funds are available for payment of such benefits."

The amendment of October 30, 1973, added a new art. VII to the Rules of Eligibility, whereby the assets of the trust fund were divided into three accounts, designated "Account A," "Account B" and "Account C," with highest priority accorded to members eligible for payment from Account A. The members so eligible consisted of the following: (a) "those members and pensioners (or the beneficiaries of members) who were retired and approved for retirement benefits prior to February 18, 1973," and (b) those "who, although not approved for benefits prior to February 18, 1973: (i) had attained age 65 prior to February 18, 1973, and have not continued in covered employment after that date, (ii) were totally and permanently disabled prior to February 18, 1973, (iii) are beneficiaries of a member who died prior to February 18, 1973, (iv) had terminated covered employment prior to January 16, 1973, or (v) had terminated covered employment after January 15, 1973 and before February 16, 1973, *and who demonstrate to the satisfaction of the trustees that such a termi-*

---

[1] "1. The Trustees shall utilize the Fund to provide retirement benefits for employees who are employed by an Employer, within covered employment as defined in the Rules and Regulations adopted by the Trustees. Such benefits may, under the Rules and Regulations established by the Trustees, be payable to dependents and beneficiaries of an employee. The amount of benefits provided for an employee shall not be dependent upon the identity of his employer. The Trustees shall have full authority to determine all questions as to eligibility for and the nature, amount and duration of benefits to be provided hereunder, and the determination of the Trustees made in good faith with respect thereto shall be final. . . .

"3. The Trustees shall adopt rules and regulations governing eligibility for and the nature, amount and duration of benefits hereunder. Copies of such rules and regulations shall be furnished to the Union and to each Employer."

Forbes *v.* Kramer.

*nation of employment was not part of a plan or scheme to
secure a priority or preference over other Fund members
in the allocation of Fund assets"* (emphasis supplied).

The plaintiff's claim of priority was based on his asser-
tion that he fell within the last of those categories. In their
decision of February 28, 1974, the trustees disqualified him
from participation in Account A because he failed to dem-
onstrate to their satisfaction that his retirement had not
been part of a plan to obtain priority over other members
of the trust fund. The crucial portion of that decision is set
forth in the margin.[2]

The trial judge ruled that the plaintiff's rights were gov-
erned by the amendment to the Rules of Eligibility adopted
on October 30, 1973, because his claim for benefits had not
been approved for payment prior to that date, and that the
amendment was a sensible and reasonable solution to the
problem with which the trustees were confronted. He fur-
ther ruled that the trustees were warranted in inferring
that the plaintiff's resignation was motivated by the hope
of thereby obtaining a preferential claim against the trust
fund,[3] and, at any rate, that they were entitled to conclude
that the plaintiff had failed to satisfy them to the contrary.

---

[2] "The reason advanced by Mr. Forbes for his February 2 notice of
February 15 termination is that he believed that in the long run the
Fund would become insolvent, but that he did not believe that the
Whiting closing was imminent. Thus Mr. Forbes admits that his resig-
nation was caused by a desire to obtain priority status in the Fund, but
that his action in resigning when he did was not prompted by the
threat of the Whiting closing.

"In view of the timing of his resignation the board find that he has
not demonstrated to the satisfaction of the trustees that his termina-
tion of employment was unrelated to the Whiting closing. Mr. Forbes is
remitted to his rights as a 'Whiting member' under Account B."

[3] When asked during his cross-examination at the trial why he had
chosen the week of January 22, 1973, to make an appointment at the
office of the trustees to discuss his retirement, the plaintiff testified:
"Because of the number of people who had retired, and then I heard
the rumors of some forty people that were going to be laid off, and
the membership was decreasing so fast that I just felt that if I waited
as long as I had intended to wait, until I was sixty-two, there was a
possibility, with the decreasing membership or declining membership,
that it was safer to get what I knew I had at that time than wait and
possibly lose what I might be getting two years from then."

Finally, the judge found and ruled that the plaintiff had not sustained his burden of "showing that the actions of the trustees were arbitrary, capricious or in bad faith."

1. The plaintiff's first contention is that the amendment of October 30, 1973, could not validly apply to him. His principal argument in support of that contention is that his rights in the trust fund had vested on February 15, 1973, the date of his resignation, and that the trustees could not thereafter abridge those rights by amendment to the Rules of Eligibility or otherwise. He relies on *Danti* v. *Lewis*, 312 F. 2d 345, 348-349, 351 (D.C. Cir. 1962), where it was held by a divided court that the retroactive imposition of an additional eligibility requirement by the trustees of a similar employees' fund was unreasonable and improper.

The fallacy of the argument lies in its failure to identify accurately the purpose and effect of the amendment. In adopting the amendment the trustees did not purport to affect the claim of the plaintiff or of any other member to a share of the fund, but did no more than establish priorities among different classes of eligible members in the realization of those claims. Indeed, when they declined to accord the plaintiff the status of a preferred claimant, they expressly declared him eligible to press his claim against Account B (see fn.2). The distinction is somewhat like the one between secured and unsecured creditors, and is also analogous in some degree to the distinction between liability and collectability. Those distinctions are highly meaningful where there is insufficient money in a fund to satisfy all the claims against it, and that is precisely what happened here. The trustees were faced with the choice of establishing priorities of some claims over others or simply paying out the claims on a first-come-first-served basis, and we discern nothing in the *Danti* case that restricted them to the latter alternative. On the contrary, the trustees were expressly authorized to amend their rules so long as no pension which had already been "approved for payment" was reduced thereby, and the plaintiff's claim had not been so approved at the time of the amendment here. We conclude that there was no abuse of the broad powers con-

ferred upon the trustees by the adoption of the amend-
ment. See *Bono* v. *Kramer,* 346 Mass. 355, 360 (1963).

The same holds true of the plaintiff's second line of
attack on the amendment — that it failed to establish a
preferred class of employees consisting of those who be-
came eligible for retirement by January 16, 1973, but did
not promptly exercise their right to do so. That contention
goes, at most, to the wisdom rather than the legality of the
system of priorities created by the amendment. Compare
*Bono* v. *Kramer, supra.*

2. The plaintiff's remaining contention is that even if the
amendment to the Rules of Eligibility applied to his claim,
the trustees were in error when they determined his claim
to be outside the scope of Account A. In support of that
contention he seems to assert that the trustees were with-
out power to exclude anyone from the class of persons
otherwise eligible because of termination of employment
between January 15 and February 16, 1973, in the absence
of a showing that the applicant had definite knowledge of
Whiting's plan to go out of business at the time of his
termination. The difficulty with that argument is that it is
unsupported by anything in the relevant language of the
amendment. Under the provision of which the plaintiff
sought to avail himself, the issue was not whether he had
advance knowledge of Whiting's cessation of business but
merely whether his termination was "part of a plan or
scheme to secure a priority or preference over other Fund
members in the allocation of Fund assets." Under that pro-
vision, moreover, the plaintiff had the burden of satisfying
the trustees of the negative of that proposition, rather than
the other way around.[4] Thus, there was nothing arbitrary
or capricious in the trustees' action on the plaintiff's claim
of priority.

*Judgment affirmed.*

---

[4] As previously noted, however, the plaintiff appears to have ad-
mitted at the hearing before the trustees that his termination was in
fact so motivated (see fn.2), and clearly made such an admission at
the trial (see fn.3).