GRACE·MIRABELLA vs. AMALGAMATED INSURANCE FUND
& another.[1]

Suffolk.    February 21, 1980. — May 1, 1980.

Present: GREANEY, PERRETTA, & KASS, JJ.

*Trust*, Retirement trust, Trustee's powers. *Labor*, Retirement fund.

Under a noncontributory retirement plan of an insurance fund which
    provided that trustees of the fund had the sole and exclusive right to
    determine whether an applicant for retirement benefits met the plan's
    eligibility requirements and that the decision of the trustees would be
    final and binding upon the applicant, a decision of the trustees could
    not be reversed except upon clear proof of bad faith, arbitrary action
    or abuse of authority. [637]
In an action by a plaintiff seeking retirement benefits from an insurance
    fund, a judge erred in ordering the fund to pay the benefits where
    there was substantial evidence to support a finding by the trustees of
    the fund that the plaintiff was ineligible for benefits and there was no
    evidence that the trustees acted arbitrarily or abused their authority in
    denying benefits to the plaintiff. [637-639]

BILL IN EQUITY filed in the Superior Court on June 15,
1973.

The suit was heard by *Sahady, J.*, a District Court judge
sitting under statutory authority.

*Paul F. Kelly* for the Amalgamated Insurance Fund.

*Lawrence R. Cohen* for the Robert Lawrence Company,
Inc.

*Rocco C. Senese* for the plaintiff.

KASS, J.    Grace Mirabella, who had been a stitcher in the
garment industry, applied for retirement benefits from the
Amalgamated Insurance Fund (Fund) and was denied them
for failure to meet eligibility criteria.    From that denial,

---

[1] Robert Lawrence Company, Inc.

Mirabella sought relief. A judge sitting without a jury found that Mirabella had met the eligibility requirements of the Fund and judgment entered imposing joint and several liability on the Fund and the codefendant, Robert Lawrence Company, Inc., to pay benefits to Mirabella at the rate of $63.75 per month, retroactive to September 1, 1972, and for the remainder of her life. From that judgment the defendants appealed.

The retirement plan of the Fund is noncontributory; i.e., contributions to it are made by employers in accordance with collective bargaining agreements between the Amalgamated Clothing Workers of America, AFL-CIO (later known as Amalgamated Clothing and Textile Workers Union) and manufacturers and contractors of men's and boys' clothing. The employees make no payment to the Fund. See *International Bhd. of Teamsters* v. *Daniel*, 439 U.S. 551, 553 (1979). Equal numbers of employer and union representatives comprise the board of trustees of the Fund and these trustees administer the Fund for the benefit of members of the union.

Certain background facts are not in contention. Mirabella worked on and off for various clothing manufacturers in the Boston area from 1955 until 1972. Her claim for benefits against the Fund was under part 3 of the "retirement plan," which applies to employees who have worked between ten and twenty years in the garment industry. Of four criteria of eligibility, the one which is contested is that the employee shall have "been continuously employed in Covered Employment by an Employer or Employers for at least ten (10) years immediately prior to the Employee's application." The term "covered employment" is satisfied with respect to any calendar year in which the employee was actively employed for at least twenty-six weeks. It was the practice of the trustees to credit claimants against the Fund with a full week's employment during a week in which the claimant worked only a partial week. In order to satisfy the term "covered employment" the employer must be one who is obligated to contribute to the Fund for retire-

ment purposes. An employee was credited by the trustees with covered employment even though a participating employer had not, in fact, made its required payments to the Fund.

It is the position of the Fund that Mirabella did not work at least twenty-six weeks in 1968, 1971 and 1972 and that, so far as Robert Lawrence Company, Inc., is concerned, it was not a party to a collective bargaining agreement requiring it to contribute to the Fund during the years 1960 through 1970 inclusive, and the preponderance of the year 1971. Thus, to the extent Mirabella relied upon employment with Robert Lawrence Company, Inc., during 1968 and 1970[2] to satisfy the eligibility requirements of the Fund, even had she enjoyed at least twenty-six weeks of active employment during those years, it was not "covered employment" because Robert Lawrence Company, Inc., was not a contributing employer. In the aggregate, therefore, the Fund contests Mirabella's eligibility during four of the relevant ten years: 1968, 1970, 1971 and 1972.

On these disputed issues the trial judge found that Mirabella worked continuously from 1955 to 1971, and that while she "may not have worked steadily, she nevertheless worked at least for twenty-six different days and different weeks in any given year." We are constrained to observe that upon our reading of the record these findings required an indulgent attitude toward the plaintiff's view of the evidence. Social security records admitted in evidence reflected that Mirabella worked for only one quarter of the year in 1972. Those records also lead to an almost irresistible inference that she worked less than twenty-six weeks in 1968 and 1971 as well. As for 1970, the social security records could be read to reflect more than twenty-six weeks of work, but the employment was all with Robert Lawrence Company,

---

[2] The year 1971 is probably in the same category, but we exclude it because Robert Lawrence Company, Inc., did not know the precise date in 1971 when it was required to begin making payments to the Fund. Thus a possibility exists that it was a covered employer for more than twenty-six weeks in 1971.

Inc., which was not a covered employer that year. Mirabella herself testified that there was "no way she can tell how much she worked in any given year." (Mirabella, who is not English speaking, testified through an interpreter who generally cast her statements in the third person). Her more studied response to a notice to admit facts disclosed similar uncertainty by Mirabella about how much she worked.

It is not necessary, however, for us to conclude that the judge's findings were clearly erroneous. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). *Marlow* v. *New Bedford*, 369 Mass. 501, 508 (1976). Under the governing document, the "Retirement Plan of the Amalgamated Insurance Fund," the trustees have the "sole and exclusive right to determine whether or not the applicant has met the eligibility requirements of the Retirement Plan and qualifies for retirement benefits. The decision of the trustees is final and binding on the applicant." Where the rights of the parties are controlled by a plan and the plan itself reposes in trustees (as here) or other fiduciary (e.g., a committee) authority to determine questions of fact which arise in its administration, it is settled that a reviewing court will not interfere with the action of the fiduciary except upon clear proof of bad faith, arbitrary action or abuse of authority. *Clark* v. *New England Tel. & Tel. Co.*, 229 Mass. 1, 8 (1917). *Bono* v. *Kramer*, 346 Mass. 355, 360 (1963). *Forbes* v. *Kramer*, 5 Mass. App. Ct. 474, 478-479 (1977). Compare *Old Colony Trust Co.* v. *Silliman*, 352 Mass. 6, 10 (1967). A line of Federal cases states the same principle in terms of limiting judicial inquiry to whether the trustees acted arbitrarily and capriciously. *Gaydosh* v. *Lewis*, 410 F.2d 262, 265-266 (D.C. Cir. 1969). *Lowenstern* v. *International Assoc. of Machinists & Aerospace Workers*, 479 F.2d 1211, 1213 (D.C. Cir. 1973). *Beam* v. *International Organization of Masters, Mates & Pilots*, 511 F.2d 975, 980 (2d Cir. 1975).

While a finding of Mirabella's ineligibility is perhaps less than totally inescapable, it is, at the least, supported by substantial evidence. She submitted no evidence to the trustees of the Fund of at least ten years of covered employment

prior to her retirement, although required by the terms of the Fund to do so. Her testimony about her employment history was vague and contradictory. For example, she repeatedly testified that she had worked only for Robert Lawrence Company, Inc., yet at other times she spoke of having worked for other companies, and her social security records disclosed that she had worked for other companies. The more reasonable inferences from the social security records, as we have noted, tended to the conclusion that she had worked less than twenty-six weeks during 1968, 1971 and 1972. The evidence that Robert Lawrence Company, Inc., was not a covered employer in all of 1968 and 1970 and most of 1971 was unrebutted. Even crediting Mirabella with a full week's employment if she worked at least one day during a week, the trustees were unable to qualify Mirabella for retirement benefits.

There is no evidence in the record of any bias on the part of the trustees against Mirabella or of any failure by them to act on her claim in good faith or that they acted in a manner different from that which they applied to the cases of similarly situated former workers in the garment industry. In the circumstances, it cannot be said that the trustees of the Fund acted arbitrarily or abused their authority in connection with Mirabella's claim. The trustees were under a fiduciary duty to maintain the fiscal integrity of the Fund and this duty required them to adhere to the eligibility criteria set up for the Fund. Even were Mirabella's view of the facts a reasonable one, as between competing interpretations of the result to which the facts lead under the plan, a court is bound by the trustees' determination if they have not acted arbitrarily or capriciously. *Lowenstern* v. *International Assoc. of Machinists & Aerospace Workers*, 479 F.2d at 1213.

There was still less basis for the judgment against Robert Lawrence Company, Inc. Whatever that firm's contractual obligations, they were to the Fund and not to individual beneficiaries of the Fund. Indeed, a beneficiary of the Fund has no direct interest in the collection of contributions

due from employers to the Fund. The status of "covered employment" turns on an employer's contractual undertaking to make payments to the Fund, not on whether the employer has in fact made those payments.[3]

The judgments against the Fund and Robert Lawrence Company, Inc., are reversed, and judgments are to enter for the defendants.

*So ordered.*

---

[3] We do not mean to suggest that Robert Lawrence Company, Inc., failed to make required contributions to the Fund during those years when it was required to do so by the terms of a collective bargaining agreement.