HILL, APPELLEE, *v.* IRONS ET AL., APPELLANTS.

(No. 216—Decided June 12, 1952.)

*Mr. C. Donald Dilatush* and *Mr. Cedric E. Stanley,* for appellee.

*Mr. Robert J. Stoecklein,* for appellants.

MATTHEWS, J. This is an appeal on questions of law and fact.

In her amended petition, the plaintiff alleged that on or about the 3rd day of February, 1925, she was the owner of certain described real estate located in the village of Lebanon, Ohio; that on that date she entered into the following contract with the defendants, to wit:

"This agreement entered into this third day of February, A. D., 1925, by and between Carrie B. Williams party of the first part, and Elbert W. Irons and May A. Irons, parties of the second part,

"Witnesseth: That whereas the party of the first part has this day conveyed by deed to the parties of the second part, certain real estate located in Lebanon, Warren county, Ohio, said real estate being more particularly described in said deed, to which reference hereby made, and whereas the parties of the second part are sureties for the party of the first part and her husband, D. W. Williams, on a renewal note calling for the sum of $7,879.90, with interest, payable to

The Citizens National Bank & Trust Co. of Lebanon, Ohio, and, whereas it is the purpose and intention of the party of the first part to secure and save harmless said parties of the second part from any loss by reason of said surety obligation.

"Now be it therefore agreed that if after the payment of the mortgage claim of the Peoples Building & Loan & Savings Co., of Lebanon, Ohio, with interest, the payment of the obligations or claims, with interest, on which the parties of the second part are sureties and the payment of all costs and expenses which the parties of the second part may incur by reason of the ownership of said property, there remain any balance or net profit, same shall be paid to the party of the first part.

"It is further agreed that if the party of the first part pay or cause to be paid the indebtedness above referred to at any time before parties of the second part dispose of said property, parties of the second part agree to reconvey said property to the party of the first part.

"This contract to be binding on parties hereto, their heirs, executors and administrators."

The plaintiff alleged also that as set forth in such contract she conveyed the described real estate to the defendants, in trust and subject to all the terms, provisions and conditions set forth in such contract.

The plaintiff alleged also that the defendants thereupon entered into possession of said real estate and have ever since been and are now in possession thereof, and have received the entire benefit and income therefrom, and then set forth the amount of cash income therefrom for a part of the period; that the total amounted to $27,815; and that all the incumbrances on the real estate had been paid and the obligations referred to in said agreement had been discharged.

The plaintiff alleged also that the defendants had not conveyed or offered to convey the title to said real estate back to her or paid or accounted to her for any of the income therefrom.

The plaintiff prayed that defendants be declared trustees and decreed to convey the title to said real estate to her and for an accounting.

By answer, the defendants set forth a detailed history of the circumstances culminating in 1925 with their being bound as sureties for the plaintiff and her husband for $7,879.90, with no indemnity against ultimate loss, excepting a mortgage on the real estate, which is the subject matter of this action, second to a first mortgage for $4,800, and that the real estate was not worth more than $7,000 at the time. They alleged that plaintiff and her husband jointly owed this amount, for which the defendants were sureties, and had paid substantially nothing on either debt for years, and that the bank to which the debt of $7,879.90 was owing was insisting upon payment, and that as a result and in order to avoid the expense of foreclosure and to meet the demands of the bank, this real estate was conveyed to them.

The defendants also alleged that at and prior to the time this deed was executed and delivered to them there were pending negotiations by plaintiff and her husband for the sale of this property, but that the bank refused to wait until said negotiations were concluded, and that the agreement referred to by plaintiff related to those negotiations, that part of the agreement was in writing and part was oral, that the "written portion of this agreement was wholly contingent upon a sale being consummated" to the prospective purchaser (an oil company), and that the plaintiff and her husband would relieve the defendants of their obligation as sureties not later than 90 days after

February 3, 1925, or as soon as the property was sold to the prospective purchaser, with whom negotiations were pending, and that the written portion of said agreement was to have no force or validity unless said property was sold to said purchaser.

The defendants also alleged that the plaintiff and her husband agreed to relieve the defendants of their liability as sureties within 90 days of February 3, 1925.

The defendants also alleged that the negotiations for the sale were abandoned, that the plaintiff and her husband did not relieve the defendants of their liability as sureties, and, on the contrary, the defendants were required to, and did from income from this property and from their own funds pay all the liens against said property, and that they had managed, controlled, operated, leased, and possessed said property as their own from February 3, 1925, forward.

We take it that the foregoing constitutes an explanatory denial of the contract as alleged by the plaintiff.

In addition, the defendants pleaded the failure of the plaintiff to institute an action for 22 years and her failure to pay them or relieve them of their liability as sureties, that records had become lost, an accounting difficult or impossible, and charged that the plaintiff had been guilty of laches.

As a third defense, the defendants pleaded the statute of limitations.

The plaintiff by reply denied that she was a principal debtor and alleged to the contrary that she was a surety for the debt of her husband just as the defendants were. The plaintiff denied much of the history of the relations between the parties culminating in the situation that existed on February 3, 1925, and denied all allegations of any agreement other than the written one, and denied the existence of any condition to the taking effect of the agreement.

The reply also placed in issue the defense of laches and the statute of limitations.

(1) There was no competent evidence of the existence of any agreement other than that evidenced by the writing pleaded by the plaintiff. On objection, oral testimony of conversations between the parties at the time the written contract was signed was excluded, and thereupon the defendant made the following proffer:

"That Mrs. Hill and her attorney, in the presence of Mr. Irons and Mrs. Irons told them that they had been negotiating with an oil company for the sale of this property—they believed that it could be sold. That Mrs. Hill wanted this written agreement that in the event the property could be sold to the oil company and was sold that everything over and above the indebtedness was to be paid back to her.

"Further that if Mr. Irons were permitted to testify that he was led to believe by Mrs. Hill and her attorney that this sale would take place within a very short period of time, to wit: not to exceed several months from Feb. 3, 1925, and that it is the reason for which he and his wife signed this agreement—that they had not anticipated and were not told that this was to go on for twenty-five years but were informed that they would be relieved of their obligations and these debts they had taken on as soon as the property could be sold."

We think it clear that this proffer would not prove a condition precedent to the taking effect of the written agreement, but would, if believed, prove a totally different contract. The written contract recites that the plaintiff and her husband had that day conveyed the real estate to the defendants—and it is undisputed that that recital was true—and that the written agreement was entered into to set forth the purpose and terms

under which the conveyance was made. It is impossible for us to perceive any circumstances that would suspend the binding effect of some contract in view of the conveyance. The title of necessity had to be held either according to the terms of the writing or under some other terms. It is a classic situation for the application of the "parol evidence" rule, excluding all prior and contemporaneous oral testimony to alter, add to, or take from the terms of the written memorial executed by the parties.

We find that the rights of the parties must be determined by the legal effect of the deed and the written agreement of the parties.

(2) Now what was the relation between these parties created by this deed and contract? We have no doubt that by accepting the legal title under the terms of that contract the defendants became trustees of a continuing and subsisting trust charged with all the obligations imposed by the agreement enforceable under the principles and practices of equity, and as those terms are used in Section 11236, General Code.

Most of the questions presented in this case were involved in *Homer* v. *Wullenweber,* 89 Ohio App., 255, 101 N. E. (2d), 229, recently decided by this court. As indicating our present view, we quote the syllabus to that case:

"1. A trust may be engrafted upon a deed absolute by a contemporaneous oral agreement or declaration.

"2. A trust created intentionally by the settlor is an express or direct trust as distinguished from a trust created by operation of law.

"3. The purpose of a trust is sufficiently declared, where it appears that it is for the use and benefit of a specified person.

"4. Where the settlor creates a trust without imposing any specific duties upon the trustee, his duties are fixed by equitable rules. All trustees owe the duty

of loyalty, to not delegate personal duties, to keep and render accounts, to give the cestui que trust information upon request, to permit inspection of trust records and property, to not commingle trust property, to make the trust *res* productive, and to pay over the income to the cestui que trust.

"5. An express direct trust, until the trustee renounces it to the knowledge of the cestui que trust, is a continuing and subsisting trust within the purview of Section 11236, General Code, and the statute of limitations does not apply to it.

"6. To start a statute of limitations running in favor of a trustee of an express trust, it is essential for the trustee to show a plain, strong, and unequivocal renunciation."

There was no evidence of a "plain, strong, and unequivocal renunciation" of this trust that would start the running of the statute of limitations.

(3) Upon the subject of laches, it is said in 16 Ohio Jurisprudence, 265, that "in short, the statutes govern the effect of mere delay in suing for equitable relief the same as they govern the effect of delay in bringing any other action. The interpretation and application of the Ohio statutes of limitation to the various kinds of equitable actions are fully treated elsewhere."

In the absence of some inequitable circumstance, the statutory period of limitation furnishes the only standard of diligence. We find no circumstance in the evidence in this case that would cause a court to deny relief based on the defense of laches.

Our conclusion is that the plaintiff is entitled to the relief for which she has prayed, and the court finds that the defendants are trustees of the legal title, and should be decreed to convey that title by special warranty deed against any incumbrance or conveyance

by them, and account to plaintiff for the rents and profits.

We have examined the report of the master commissioner and the findings of the trial court on the subject of the accounting and the allowance to the defendants for their services. A similar finding will be made by this court, made, however, to include the rents and profits and allowance for services to the date of the decree of this court.

*Judgment accordingly.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.