John KOSTY, Appellant,

v.

John L. LEWIS et al., Trustees, United Mine Workers of America Welfare and Retirement Fund of 1950, Appellees.

No. 17229.

United States Court of Appeals District of Columbia Circuit.

Argued April 24, 1963.

Decided May 23, 1963.

Petition for Rehearing En Banc Denied En Banc July 9, 1963.

Petition for Rehearing by the Division Denied July 15, 1963.

Mr. Louis Rabil, Washington, D. C., with whom Mr. Joseph M. Stone, Washington, D. C., was on the brief, for appellant.

Mr. Edward L. Carey, Washington, D. C., with whom Messrs. Val J. Mitch and Charles L. Widman, Washington, D. C., were on the brief, for appellees.

Before BAZELON, Chief Judge, and BURGER and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge.

A problem arising in the administration of the United Mine Workers of America Welfare and Retirement Fund of 1950 is the subject of this appeal. It is prosecuted by a member of the union who brought suit to compel the payment of a retirement pension which the Trustees of the Fund had denied him. After a trial to the District Court, his action was dismissed. An understanding of the issues to be resolved requires an examination of (1) the nature and origin of the Fund, including the provisions made for its administration, (2) the circumstances of the appellant in relation to his claim of eligibility for a pension, and (3)

the function and scope of judicial review in a matter of this kind.

**I**

The creation of the Fund in the first instance was dependent upon the benevolent regard of Congress, as manifested by the following exempting provision in Section 302(c) of the Labor Management Relations Act of 1947,[1] which authorizes the establishment in the coal industry of welfare funds

"(c) * * * for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): *Provided,* That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, pensions on retirement or death of employees, compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unemployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer * * *."

Pursuant to this statutory authorization, a subsequent collective bargaining agreement—the National Bituminous Coal Wage Agreement of 1950—brought the Fund into being, expressly denominating it to be "an irrevocable trust created pursuant to Section 302(c) of the 'Labor-Management Relations Act, 1947,'" to endure "as long as the purposes for its creation shall exist." The purposes specified include the payment of pension benefits on retirement of employees. The source of revenues for

1. 61 Stat. 157, as amended 73 Stat. 537, 29 U.S.C. § 186.

these purposes was the payment into the Fund by the mine operators of 30¢ in respect of each ton of coal produced. Responsibility for operation of the Fund was placed in a Board of Trustees consisting of one representative of the United Mine Workers of America, one representative of the coal operators, and one neutral selected by the other two. The Trustees were directed to designate a portion of the revenues received for use in providing pensions, but a substantial measure of discretion, with respect to pension as well as other benefits, was lodged in the Trustees in these terms:

"Subject to the stated purposes of this Fund, the Trustees shall have full authority, within the terms and provisions of the 'Labor-Management Relations Act, 1947,' and other applicable law, with respect to questions of coverage and eligibility, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds, and all other related matters."

At their second meeting on April 5, 1950, the Trustees adopted Resolution No. 10, providing a monthly pension for retired employees. Resolution No. 10 promulgated regulations (stated to be "subject to amendment, revocation and revision at the discretion of the Trustees") prescribing eligibility requirements and covering other administrative aspects of the pension system. In order to be eligible, an applicant for a pension was required to have (1) attained the age of 60, (2) retired by permanently ceasing work in the Bituminous Coal Industry after May 28, 1946, (3) been employed for at least one year immediately preceding his retirement, and (4) completed 20 years of service in the Coal Industry.

On January 28, 1953, the Trustees adopted Resolution No. 30, which superseded Resolution No. 10 as the governing regulation with respect to pension eligibility requirements. The new resolution was made effective forthwith, that is to say, January 29, 1953. The significant change which it made, for purposes of this proceeding, was to prescribe that the requisite 20 years of service must have taken place within the 25-year period immediately preceding the filing of a pension application. A few weeks later, on March 13, 1953, the Trustees, by Resolution No. 31, amended Resolution No. 30, retroactively effective as of January 29, 1953, by enlarging from 25 to 30 years the period immediately preceding application within which the 20 years of service must have occurred. This change was perpetuated in a further amending resolution, No. 32, adopted by the Trustees on May 12, 1953.

II

The appellant, at the age of 65 years and five months, retired on June 26, 1953, and promptly thereafter filed his application for a pension on the form provided by the Fund. The application recited a total of over 31 years of service in the coal industry, comprised of two nonconsecutive periods. The first of these was from 1906 to 1924 as an employee of Bethlehem Mines Corporation; the second was from 1940 to 1953 as an employee of Stineman Coal & Coke Company.

The administrative files of the Fund relating to this application, which were put in evidence in the District Court, showed that appellant's application was denied for the reason that it did not appear that appellant had had 20 years of service in the 30-year period immediately preceding the filing of the application, as required by Resolution No. 30, as amended. The record suggests that efforts were made over a long period of time, both by the appellant and by others on his behalf, to persuade the Trustees to alter their decision, but these efforts were unavailing and the suit in the District Court was instituted.

The appellant's second period of employment—from 1941 to 1953—was conceded by the Trustees, but, in response to interrogatories, the Trustees stated that they had no information as to whether the appellant had or had not been em-

ployed as a coal miner from 1906 to 1924. At the trial appellant testified at length with respect to this first period of employment, stating that it had ended because he had received an injury in the course of his employment. This testimony was corroborated by that of another miner who had worked with appellant at the same mine throughout the entire period from 1906 to 1924. The Trustees offered no evidence of any kind contradicting this testimony, and made no effort to impeach the witnesses on this point.

The trial judge found that Resolution No. 10 imposed "no restriction as to the period of time in which those 20 years of service had to be completed." This finding seems fully justified by the language of Resolution No. 10, and the Trustees make no contrary contention. Since appellant was over the age of 60 at the time Resolution No. 10 was adopted, he could have qualified for a pension thereunder at any time by a simple election to stop working. He was not bound to do so, however, because Resolution No. 10 did not impose any requirement that an employee, otherwise qualified for a pension thereunder, was obligated to terminate his employment and take his pension.

The record shows explicitly, from the testimony of the neutral Trustee, that no notice of any kind was given by the Trustees of their purpose to change the eligibility requirements. As has been noted, the amending resolution was effective immediately upon its adoption. Thus, appellant, at the age of 65, found his existing eligibility abruptly terminated, and he was confronted with the necessity of amassing approximately 8½ years additional service in order to qualify under the new rule.[2] The trial judge concluded that, under these circumstanc-

es, there was no evidence of arbitrary or capricious conduct on the part of the Trustees *vis-a-vis* the appellant, and that his claim for relief had not been established.

### III

The trial judge correctly concluded that the issue presented to him was whether the Trustees' action was arbitrary or capricious in relation to the appellant in the light of the facts adduced. This conclusion is fully in accord with the definition of the scope of judicial review articulated by this Court in Danti v. Lewis, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962). Both in that case and in this the Trustees have accepted the appropriateness of this definition, and, accordingly, we need not consider any contention that there is no power whatsoever in a court to interfere in any way with the Trustees in their administration of the Fund. It could not be otherwise. The institutional arrangements creating this Fund and specifying the purposes to which it is to be devoted are cast expressly in fiduciary form;[3] and the Trustees, like all fiduciaries, are subject to judicial correction in a proper case upon a showing that they have acted arbitrarily or capriciously towards one of the persons to whom their trust obligations run.

### IV

The question before us, then, is: Was the court below right in determining, on the facts of record, that the abrupt alteration by the Trustees of the eligibility requirements was not an arbitrary or capricious action in its impact upon appellant?

Counsel for appellant have pressed two principal contentions upon us as war-

---

2. The application filed by appellant stated "illness" as a reason for retiring. This fact, when considered in conjunction with appellant's advanced age, underscores the magnitude of the adverse effect upon appellant wrought by the change in the years-of-service requirement.

3. See Lewis v. Benedict Coal Corporation, 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed. 2d 442 (1960). The statutory authority for the Fund is given in trust terms, and the parties to the instruments creating it adhered rigorously to this terminology. Appellant's suit, therefore, is one to establish his status and rights as a beneficiary.

ranting reversal of the decision of the District Court. One is couched in terms of "vested rights," and consists of the claim that appellant, prior to the adoption of the revised eligibility requirements, had possessed in substance fully matured rights entitling him to a pension, and that these rights could not lawfully be divested. Essential to this argument is the assertion that that element of eligibility in Resolution No. 10 involving actual retirement from work is not to be placed in the same scale with the other requirements, such as length of service and age—that it should be regarded as a "procedural rule" rather than one of a substantive character, and thereby be waived or disregarded in appraising the degree to which pension rights have become vested in one who meets all of the other standards laid down as essential to eligibility.

In the view we take of the case, however, we find it neither necessary nor illuminating to approach the problem by reference to these well-worn legal slogans.[4] We recognize that the Trustees have been accorded wide latitude in specifying from time to time *what* the eligibility qualifications shall be. Our concern is, rather, with *how* changes in the qualifications are made. Stated another way, our interest here is directed to the reasonableness of the opportunity afforded to mature pension eligibility under current standards where all that is lacking is the actual termination of employment, rather than in debating whether such eligibility should be regarded in substance as already having been matured.

This brings us to appellant's second major contention, which is that the Trustees acted arbitrarily in altering the eligibility requirement in respect of years of service without prior notice of any kind or the provision of an opportunity rationally calculated to give appellant an opportunity to elect between taking his pension or continuing in employment subject to the new requirement. It is clear from the nature of the testimony given by the neutral Trustee at the trial that the Trustees felt themselves under no obligation of any kind in this regard. This testimony was simply that no notice of any kind was afforded, which is another way of saying that the Trustees looked upon employees situated as was appellant as continuing to work in the coal industry at their peril in terms of the possibility that pension eligibility might be wiped out for all practical purposes at any moment by the sudden action of the Trustees in changing the requirements. We do not believe that the concededly broad grant of authority to the Trustees was this broad.[5] To hold otherwise would make this particular grant wholly out of harmony with the other features of the trust agreement, which reflect the fiduciary character of the responsibilities devolved upon the Trustees in respect of employees who had devoted substantial segments of their lives to the coal industry.

We do not deny the authority of the Trustees to revise pension eligibility requirements in the light of their experience. Flexibility of this kind seems especially necessary for the operation of

4. Danti **v.** Lewis, supra; compare Ruth v. Lewis, 166 F.Supp. 346 (D.D.C.1958), with Hobbs v. Lewis, 159 F.Supp. 282 (D.D.C.1958); cf. Kennet v. United Mine Workers of America, 183 F.Supp. 315, 317–318 (D.D.C.1960).

5. In the Danti case, supra, the employee had retired and filed his application prior to the adoption of Resolutions Nos. 30 and 31, but it was not considered until Resolution No. 30 was in effect. Although possessing 20 years of service in all, these years did not fall entirely with-

in the 30-year period immediately preceding retirement. This Court held that it was arbitrary for the Trustees to reject the application for failure to meet the changed standard. There, however, the Trustees on reconsideration again rejected the application on the ground that the employee had failed to qualify under another requirement of Resolution No. 10, and the resolution of that issue was necessarily involved in the decision of that case. No such claim is made by the Trustees here.

this Fund, tied as it is to the fluctuating fortunes of the coal industry. But trial and error, where trust relationships are involved, operate within some limitations of fundamental fairness. These were, in our judgment, exceeded here by the failure of the Trustees to accord any notice or period of grace which would have afforded some reasonable possibility for an employee like appellant to have elected to retire and take the pension available immediately prior to the change.[6] We do not say that actual notice to each employee of his opportunity so to elect would be necessary to defeat a claim, since there may be problems of identification and communication which the Trustees may not be able to overcome in every case, although no point of this kind is made on their behalf in the record of this case. We do say that it was clearly not beyond the capacity or resources of the Trustees to have devised some system of publicity for the impending change which reasonable men would regard as having fulfilled their fiduciary undertakings. To have made no effort at all in such direction entitled this appellant to claim with reason that he has been exposed to arbitrary and capricious action by those who owed him adherence to a different—and higher—standard of conduct.

## V

■■ Since the District Court dismissed appellant's claim because it found no arbitrary and capricious action on the part of the Trustees, the decision below is reversed. Because of the completeness of the present record and considering the nature of the case, further proceedings at the trial level are not justified. 28 U.S.C.

§ 2106 grants this Court broad discretion in the disposition of a case on appeal:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

Where the evidence of record points in only one direction, as here, justice does not require this Court to remand a case for the record to be reopened.[7]

Since we have found that the changed eligibility requirements cannot apply to this appellant because the Trustees acted in an arbitrary and capricious manner, appellant's pension eligibility is governed by Resolution No. 10. Appellant's employment from 1941 to 1953 was conceded; and the evidence of appellant's employment from 1906 through 1924 was not only uncontradicted but the Trustees expressly admitted that they had no evidence to rebut it. Reopening the proceedings thus would serve no useful purpose. Appellant met the requirements of Resolution No. 10, and he is entitled to his pension from the date of his retirement.

■■ There remain to be considered two affirmative defenses which the trial judge did not reach, namely, that the statute of limitations and laches bar the present action. Ordinarily, resolution of these issues should be made by the trial judge in the first instance. However, the record itself completely negates both defenses. Indeed, the defense of laches

---

6. Compare International Union of Electrical, Radio and Machine Workers v. NLRB, 113 U.S.App.D.C. 342, 307 F. 2d 679, cert. denied 371 U.S. 936, 83 S. Ct. 307, 9 L.Ed.2d 270 (1962). There, this Court, in a different, but not wholly unrelated context, remarked upon the "obligation of fair dealing which includes the duty to inform the employee of his

rights and obligations so that the employee may take all necessary steps to protect his job."

7. See Tinder v. United States, 345 U.S. 565, 73 S.Ct. 911, 97 L.Ed. 1250 (1953), and Minnesota v. National Tea Co., 309 U.S. 551, 60 S.Ct. 676, 84 L.Ed. 920 (1940).

was not directed to the issues which we find to be controlling. Rather, it was urged as a bar to two alternative theories of recovery advanced by appellant at the trial, i. e., that he had actually fulfilled the requirement of twenty years of service in the coal industry within thirty years preceding retirement; and that he had filed an application for pension in December of 1952, prior to the effective date of the new regulations, which application could not be found. We agree with the skepticism shown by the trial judge during oral argument as to the merits of this defense.[8] Since, however, laches goes only to two matters which are not determinative in our view of the case, we need give the defense no further consideration.

Turning to the defense that the statute of limitations barred the present action, this Court has previously held that equity does not necessarily follow the statutory period of limitations.[9] We will assume, however, that defendants were correct in their assertion that the applicable limit would be three years from the date a cause of action "accrued."[10] The Trustees urged that appellant's cause of action accrued in September of 1953, when his application was first turned down. This argument we cannot accept. Appellant was a beneficiary of an express trust. Numerous courts have held that in order to start the statute of limitations running against an express trust, there must be a clear and continuing repudiation of the right to trust benefits.[11] The administrative file, which was introduced into evidence by the Trustees themselves, is replete with documentary evidence showing that the case was still not closed in 1960, when this action was commenced. At least three different investigations were made by the Trustees into the merits of appellant's claim for a pension. One was conducted in 1957, and a final one when this action was begun. Until a defense was interposed in this case, we cannot say that appellant's claim was completely repudiated. Until that time, the Trustees were giving continuing consideration to appellant's eligibility. On these undisputed facts, this action is not barred by the statute of limitations.

The case is remanded to the District Court with directions to enter judgment for the appellant in accordance with this opinion.

---

8. See Transcript of Proceedings, pages 591–94. For laches to be a valid defense, the defendant must show an undue and unexcused delay which caused prejudice to the preparation of the defense. See Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919), Major v. Shaver, 88 U.S.App.D.C. 148, 187 F.2d 211 (1951); United States v. Morow, 87 U.S.App.D.C. 84, 182 F.2d 986 (1950).

9. Haliday v. Haliday, 56 App.D.C. 179, 11 F.2d 565 (1926); cf. Naselli v. Millholland, D.C., 89 F.Supp. 943 (1950), aff'd 88 U.S.App.D.C. 237, 188 F.2d 1005 (1951).

10. D.C.Code § 12–201: " * * * and no action the limitation of which is not otherwise specially prescribed in this section shall be brought after three years from the time when the right to maintain any such action shall have accrued. * * * "

11. See, e. g., Haliday v. Haliday, supra, Frazure v. Fitzpatrick, 21 Cal.2d 851, 136 P.2d 566 (1943), Hill v. Irons, 92 Ohio App. 141, 109 N.E.2d 699 (1952), rev'd on other grounds, 160 Ohio St. 21, 113 N.E.2d 243 (1953), Howell v. Wilson, 323 S.W.2d 61 (Tex.Civ.App.1959).