**Elouise Pepion COBELL, et al., Plaintiffs,**

v.

**Gale A. NORTON, Secretary of the Interior, et al., Defendants.**

**No. CIV.A. 96–1285(RCL).**

United States District Court, District of Columbia.

April 28, 2003.

---

Keith M. Harper, Native American Rights Fund, Washington, DC, Elliott H. Levitas, Kilpatrick Stockton, LLP, Wash-ington, DC, Dennis Marc Gingold, Mark Kester Brown, Washington, DC, for plain-tiffs.

J. Christopher Kohn, U.S. Dept. of Jus-tice, Commercial Lit. Branch, Washington, DC, Brian L. Ferrell, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washing-ton, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washing-ton, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Charles Cruden, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for Kevin Gover, defendant.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Wash-ington, DC, Brian L. Ferrell, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Henry A. Azar, Jr., Sandra Marguerite Schraibman, U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Michael John Quinn, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Stemplew-icz, Phillip Martin Seligman, Gino D. Vis-sicchio, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, San-dra Peavler Spooner, John Warshawsky, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, John J. Siemietkowski, John R. Kresse, Timothy E. Curley, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Charles Walter Findley, III, Sarah D. Himmelhoch, U.S. Dept. of Justice, Environment and Natural Resources, Washington, DC, Edith R. Blackwell, Washington, DC, Dodge Wells, U.S.

Dept. of Justice, Washington, DC, for Dept. of Interior.

J. Christopher Kohn, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Mark E. Nagle, Robert Craig Lawrence, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, John Stemplewicz, U.S. Dept. of Justice, Civ. Div., Washington, DC, Sandra Peavler Spooner, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Charles Walter Findley, III, Sarah D. Himmelhoch, U.S. Dept. of Justice, Environment and Natural Resources, Washington, DC, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, Daniel Gordon Jarcho, Herbert Lawrence Genster, Christina M. Carroll, Michael James Bearman, McKenna Long & Aldridge, LLP, Washington, DC, for Gale Norton.

Robert D. Luskin, Patton Boggs, LLP, Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for John D. Leshy, Edward B. Cohen.

Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, Peter Blaze Miller, Cynthia L. Alexander, Mathew J. Fader, Amalia D. Kessler, U.S. Dept. of Justice, Commercial

Lit. Branch, Washington, DC, Elizabeth Wallace Fleming, Trout & Richards, P.L.L.C., Washington, DC, for Michael G. Rossetti.

B. Michael Rauh, Manatt, Phelps & Phillips, L.L.P., Washington, DC, Henry A. Azar, Jr., U.S. Dept. of Justice, Fed. Programs Branch, Washington, DC, Seth Brandon Shapiro, Jonathan Brian New, Jennifer R. Rivera, Tracy Lyle Hilmer, U.S. Dept. of Justice, Civ. Div., Washington, DC, David J. Gottesman, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, Dodge Wells, U.S. Dept. of Justice, Washington, DC, for Neal McCaleb.

Lawrence H. Wechsler, Janis, Schuelke & Wechsler, Washington, DC, for Eleni M. Constantine.

Donald Michael Barnes, Porter, Wright, Morris & Arthur, Washington, DC, for Roberta McInerney. David Booth Beers, Shea & Gardner, Washington, DC, for James Regan.

William Aaron Dobrovir, Sperryville, VA, for Daniel Mazella.

Pamela J. Marple, Manatt, Phelps & Phillips, Washington, DC, for Randall Lewis. Timothy Patrick Garren, U.S. Dept. of Justice, Civ. Rights, Div., Washington, DC, for U.S.

Brian L. Ferrell, U.S. Dept. of Justice, Washington, DC, Gino D. Vissicchio, John Warshawsky, John J. Siemietkowski, U.S. Dept. of Justice, Commercial Lit. Branch, Washington, DC, for Dept. of Treasury.

Erik Lloyd Kitchen, Steptoe & Johnson, L.L.P., Washington, DC, for Ingrid D. Falanga.

Martha Purcell Rogers, Ober, Kaler, Grimes & Shriver, Washington, DC, for Timothy S. Elliott.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, Amy Berman Jackson, Trout & Rich-

ards, P.L.L.C., Washington, DC, for Edith R. Blackwell.

Roger Eric Zuckerman, Zuckerman Spaeder, LLP, Washington, Dc, for Robert Lamb.

Kathleen Elizabeth Voelker, Washington, DC, for James Douglas.

Stephen M. Byers, Crowell & Moring, L.L.P., Washington, DC, for Dominic Nessi.

Leslie B. Kiernan, Zuckerman Spaeder, LLP, Washington, DC, for Hilda Manuel.

Michael R. Bromwich, Fried, Frank, Harris, Shriver & Jacobson, Washington, DC, for M. Sharon Blackwell.

L. Barrett Boss, Asbill, Moffitt & Boss, Chartered, Washington, DC, for Steven Swanson.

Plato Cacheris, John Francis Hundley, Baker & McKenzie, Washington, DC, Sydney Jean Hoffmann, Law Offices of Plato Cacheris, Washington, DC, for John Berry, Glenn Schumaker.

Barbara Ann Van Gelder, Wiley Rein & Fielding, LLP, Washington, DC, for James A. Eichner.

William Holt Briggs, Jr., Marc Evan Rindner, Laura C. Zimmitti, Ross, Dixon & Bell, LLP, Washington, DC, for Phillip A. Brooks.

Thomas Edward Wilson, Berliner, Corcoran & Rowe, L.L.P., Washington, DC, for John S. Most.

Mary Lou Soller, Miller & Chevalier, Chartered, Washington, DC, for Chester Mills, Terrance Virden.

Jeffrey David Robinson, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Lois J. Schiffer.

Dwight Phillip Bostwick, Melissa Heitmann McNiven, Baach, Robinson & Lewis, Washington, DC, for Anne Shields.

Larry Allen Nathans, Robert W. Biddle, Bennett & Nathans, L.L.P., Baltimore, MD, for David Shuey. John Kenneth Zwerling, Zwerling & Kemler, P.C., Alexandria, VA, for Terry Steele.

Russell David Duncan, Lisa Ann Freiman Fishberg, Coburn & Schertler, Washington, DC, Steven John Roman, John Albert Gibbons, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, DC, for John A. Bryson, David Shilton.

E. Lawrence Barcella, Jr., Paul, Hastings, Janofsky & Walker, L.L.P., Washington, DC, for William G. Myers, III.

David Sidney Krakoff, Alessio D. Evangelista, Beveridge & Diamond, P.C., Washington, DC, for Daryl W. White.

Michael D. Goodstein, Resolution Law Group, PC, Washington, DC, for Tom C. Clark, II.

Bradley Stuart Lui, Morrison & Foerster, LLP, Washington, DC, for Sabrina McCarthy.

Stanley M. Brand, Andrew Dewald Herman, Brand & Frulla, P.C., Washington, DC, for Peter D. Coppelman.

Marshall L. Matz, Olsson, Frank & Weeda, P.C., Washington, DC, for Michael B. Jandreau.

Jefferson McClure Gray, D. Jacques Smith, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Kenneth Paquin, Kenneth Russell.

Emily M. Yinger, Hogan & Hartson, McLean, VA, for Accenture LLP.

William Leonard Gardner, Brian Michael Privor, Morgan, Lewis & Bockius, L.L.P., Washington, DC, for Willa B. Perlmutter.

Hamilton Phillips Fox, III, Sutherland, Asbill & Brennan, L.L.P., Washington, DC, for Charles W. Findlay.

Christopher J. Lovrien, Robert Christopher Cook, Jones Day, Washington, DC, for Michael Carr.

Dennis Marc Gingold, Washington, DC, for James Simon.

Robert A. Salerno, Piper Rudnick LLP, Washington, DC, for Sarah Himmelhoch.

Bruce Allen Baird, Michael X. Imbroscio, Nicole Jo Moss, Covington & Burling, Washington, DC, for Bert T. Edwards.

Amy S. Koch, Cameron McKenna, Washington, DC, Stephen R. Ward, Conner & Winters, P.C., Tulsa, OK, Jason B. Aamodt, Wrightman Mansion, Tulsa, OK, for Quapaw Tribe of Oklahoma.

Charles Allan Hobbs, Hobbs, Straus, Dean & Walker, Washington, DC, Geoffrey D. Strommer, Hobbs, Sraus, Dean & Walker, Portland, OR, for National Congress of American Indians.

George Joseph Hughes, Hughes & Bentzen, PLLC, Washington, DC, for Michael P. Bentzen.

Alan Lee Balaran, Washington, DC, pro se.

Richard Lee Cys, David Wright Tremaine, Washington, DC, Jonathan K. Tycko, Tycko Zavareei, LLP, Washington, DC, for Dow Jones & Co., Inc.

Christopher B. Mead, London & Mead, Washington, DC, for Kenneth F. Rossman.

Albert Lee Bynum, Godsden, AL, pro se.

Nathaniel Davis Owens, Sr., Anniston, AL, for Albert Lee Bynum.

Jill Elise Grant, Nordhaus, Haltom, Taylor, Taradash & Bladh, LLP, Washington, DC, for Intertribal Monitoring Ass'n for Indian Trust Funds.

Neil James Ruther, Towson, MD, for Native American Industrial Distributors, Inc.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the Court on defendants' motion for partial summary judgment regarding the statute of limitations and laches [1781–1], which was filed on January 31, 2003. Upon consideration of defendants' motion, plaintiffs' opposition thereto, defendants' reply brief, and the applicable law in this case, the Court finds that defendants' motion should be denied.

## I. LEGAL ANALYSIS

### A. Legal Standard For Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In a separate memorandum and order issued this date, the Court has explained at length the legal standards that govern motions for summary judgment. Accordingly, it will only be necessary to provide a brief explanation of the relevant burdens of proof governing this motion.

Defendants have moved for partial summary judgment that the statute of limitations or the doctrine of laches bars any claims by plaintiffs for an accounting of individual Indian money (IIM) trust balances or transactions prior to October 1, 1984. Because defendants will bear the burden of persuasion on this issue at trial, defendants presently possess the burden of presenting credible evidence that would entitle them to a directed verdict at trial on this issue, if the evidence were not controverted. If defendants fail to provide

such evidence, they will not have satisfied their burden of production, and the Court will deny partial summary judgment. However, if defendants do provide such evidence, they will have met their burden of production (although the burden of persuading the finder of fact on a preponderance of the evidence standard remains with defendants). The burden of production would then shift to plaintiffs, who would be required to provide credible evidence demonstrating the existence of a genuine issue for trial. If plaintiffs failed to provide such evidence, they would not have met their burden of production, and the Court could conclude that defendants have prevailed on their burden of persuasion, and enter partial summary judgment on the issues presented in their motion.

### B. The Court's November 5, 1998 Memorandum Opinion

The Court has previously addressed defendants' contention that the statute of limitations or, alternatively, the laches doctrine, bars plaintiffs' claims for an accounting of any IIM trust balances prior to October 1, 1984. The Court agreed with the parties that the statute of limitations found in 28 U.S.C. § 2401 governed this case. Subsection (a) of that statute provides, in relevant part, that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." The Court then rejected plaintiffs' assertion that the tolling language contained in the Department of the Interior and Related Agencies Appropriations Act for fiscal year 1990–91, Pub.L. No. 101–512,[1] completely eliminated defendants' right to assert the statute of limitations as a defense, explaining:

Although the Court agrees that the plaintiffs fall under the protections of the tolling statute because their claim is one for "trust mismanagement," these protections do not include the revival of potentially long stale claims. The tolling language clearly stops the clock from commencing to run on the plaintiffs' viable claims as of October 1, 1990. But nothing in this legislative history shows that the "tolling provision" was ever intended to do more than its name suggests. In other words, the provision only tolls a clock that has not commenced running. It cannot revive claims for which the clock stopped running long ago.

*Cobell v. Babbitt,* 30 F.Supp.2d 24, 43–44 (D.D.C.1998) (footnotes omitted). After examining both the statutory language and the relevant legislative history, the Court concluded that

if the plaintiffs can be allowed to bring their cause of action for an accounting based on the transactions that occurred before October 1, 1984, they must show that these claims did not accrue prior to this date. Any claims that accrued before October 1, 1984, would have been time barred before the enactment of the tolling provision in the 1990 appropriations act.

*Id.* at 44.

Although the Court did observe that, at that time, "[t]he parties agree[d] that the plaintiffs' claims accrued when the plaintiffs knew or should have known that they had a valid right of action for trust mismanagement against the government," the Court made no ruling as to that point of law. *Id.* Instead, the Court declined to

---

1. That statute provides, in relevant part, that "notwithstanding any other provision of law, the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds."

make any ruling on the statute of limitations issue because the issue had not been fully briefed and discovery had not yet been completed. The Court explained that defendants were "free to raise their statute of limitations defense at the summary judgment stage, once the parties have completed their discovery of facts that go to the plaintiffs' knowledge and have had the opportunity to adequately brief the issues presented." *Id.* at 45. In a footnote, the Court mentioned the relevant issues that it planned to address at that time:

> Presumably the Court will address issues such as when the plaintiffs' claims accrued, the effect of the statute of limitations on an action for an accounting, the undisputed facts on which the defendants base their argument that the plaintiffs' cause of action for an accounting has accrued, and equitable tolling. Specifically, the Court expects to address the issue of the effect of the trust relationship on the accrual of the plaintiffs' claims under 28 U.S.C. § 2401(a). *See Loudner v. United States,* 108 F.3d 896, 901 (8th Cir.1997) (holding that the Indian plaintiffs, as beneficiaries of the trust, were under a lessened duty to discover their claims against the United States as trustee for statute of limitations purposes under 28 U.S.C. § 2401(a) because of the fiduciary relationship (citing *Manchester Band of Pomo Indians, Inc. v. United States,* 363 F.Supp. 1238 (N.D.Cal.1973))).

*Id.* at 45 n. 26. The Court will now address these issues.

## C. Statute of Limitations

Because plaintiffs have alleged claims for relief against the United States, their claims are barred by the statute of limitations if they were not brought within six years after their right of action accrued. The key issue thus becomes whether plaintiffs' claims have "accrued" for purposes of 28 U.S.C. § 2401(a).

In *Loudner v. United States,* 108 F.3d 896 (8th Cir.1997), the plaintiffs, who claimed to be descendants of the Sisseton–Wahpeton Sioux Tribe, learned in 1994 of the existence of a judgment fund established in 1973 to settle a class action suit brought by the successor tribes of the Sisseton–Wahpetons. When the plaintiffs brought suit under the "Little Tucker Act," the district court dismissed the action as barred by 28 U.S.C. § 2401(a).[2] The Eighth Circuit reversed, explaining that "because plaintiffs had no reason to know of the existence of the judgment fund and, consequently, of their possible claim to it, they have a strong argument that the statute of limitations did not begin to run on their claim until they received actual notice of the fund's existence in 1994." *Id.* at 901. Because *Loudner* involved a claim for damages under the Little Tucker Act, not an equitable claim for an accounting as in the instant case, its precedential value for the instant case is somewhat limited. However, the Eighth Circuit did call attention to a case involving a claim for an accounting, *Manchester Band of Pomo Indians v. United States,* 363 F.Supp. 1238 (N.D.Cal.1973), in support of its assertion that "because the beneficiary is entitled to rely upon the good faith and expertise of the trustee, the beneficiary's duty to discover claims against the trustee is somewhat lessened." *Id.*

In *Manchester Band,* the plaintiffs filed suit against the Departments of the Interior and Treasury, asserting that the defen-

---

**2.** The "Little Tucker Act," 28 U.S.C. § 1346(a)(2), bestows jurisdiction on federal district courts for damages claims of $10,000 or less against the United States. Any appeals are taken to the Federal Circuit.

dants had mismanaged funds held in trust for them. The plaintiffs sought a declaratory judgment that the defendants were liable to them for their failure to manage the funds consistently with their fiduciary duties as trustees, as well as a judgment setting out the statutory obligations of the defendants with respect to the management of the trust funds. Having concluded that "defendants here have breached their solemn fiduciary duty owed to the Band to manage properly their trust funds, and are therefore liable," the court turned to the plaintiffs' claim for an accounting for the years 1938–46 and for a declaratory judgment as to the defendants' future obligations to provide regular accountings. *Manchester Band*, 363 F.Supp. at 1247. The court found that "defendants' duty to render satisfactory accountings to the Band is a continuing duty." *Id.* at 1248 (citing RESTATEMENT (SECOND) OF TRUSTS § 172). Additionally, the court rejected the defendants' contention that 28 U.S.C. § 2401(a) barred any plaintiffs' claims that had accrued six years or more prior to filing suit, explaining that "where, as here, there is a fiduciary relationship between the parties, the universal rule is that 'a statute of limitation does not begin to run where there is a fiduciary relationship between the parties until the relationship is repudiated.' Thus, the statute does not run against a beneficiary in favor of a trustee until the trust is repudiated and the fiduciary relationship terminated." *Id.* at 1249 (internal citations omitted).[3]

▇ The parallels between the factual situation in *Manchester Band* and the instant case need hardly be stated. However, defendants have urged the Court not to follow *Manchester Band*'s treatment of 28 U.S.C. § 2401(a), claiming that it "state[s]

a little-held viewpoint." Defs.' Mot. at 11. To the contrary, the principle that the statute of limitations does not begin to run for a beneficiary's claim in equity to enforce the obligations of the trustee until the trustee has repudiated the beneficiary's right to the benefits of the trust is well-established in recognized treatises on trust law. The leading treatise on the law of trusts states that "the beneficiaries of an express trust are not barred by laches or by the statute of limitations from enforcing the trust merely because of lapse of time; and it is only where the trustee has repudiated the trust to the knowledge of the beneficiaries that they may become barred from enforcing the trust." AUSTIN W. SCOTT & WILLIAM F. FRATCHER, THE LAW OF TRUSTS § 481.1 (4th ed.1987). Another well-recognized treatise makes clear that

> [t]o cause the Statute [of limitations] to begin running during the life of the trust there must be some unequivocal act in violation of the duties of the trustee or in repudiation of the trust, as where he declines to account to the beneficiary, or takes trust income for his own purposes, or sets himself up as the owner of the trust principal. Whether a given act is consistent with the continuance of the trust, or indicates an intent to repudiate the trust and claim adversely, is a question of fact for the determination of the court in an individual case.

BOGERT & BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 951, at 638–39 (rev.2d ed.1995).

Not only is this legal principle endorsed by the major treatises on trust law, it is also the controlling law of this Circuit. In *Kosty v. Lewis*, 319 F.2d 744 (D.C.Cir. 1963), a retired mine worker filed suit to compel the payment of pension benefits from the United Mine Workers of America

---

**3.** The court also found that the statute of limitations did not run because "the facts giving rise to defendants' breach of their duty were only revealed through the very incomplete discovery obtained." *Id.*

Welfare and Retirement Fund of 1950. The fund was an irrevocable trust fund created pursuant to the Taft–Hartley Act of 1947. After this Court dismissed the action, the plaintiff appealed. The D.C. Circuit reversed, finding that the trustees had acted in an arbitrary and capricious manner in denying payment of the plaintiff's retirement benefits. The Court also rejected the trustees' claim that the suit was barred by the statute of limitations, explaining that the trustees had failed to repudiate the plaintiff's right to receive the benefits of the trust:

> Turning to the defense that the statute of limitations barred the present action, this Court has previously held that equity does not necessarily follow the statutory period of limitations. We will assume, however, that defendants were correct in their assertion that the applicable limit would be three years from the date a cause of action 'accrued.' The Trustees urged that appellant's cause of action accrued in September of 1953, when his application was first turned down. This argument we cannot accept. Appellant was a beneficiary of an express trust.

> Numerous courts have held that in order to start the statute of limitations running against an express trust, there must be a clear and continuing repudiation of the right to trust benefits. The administrative file, which was introduced into evidence by the Trustees themselves, is replete with documentary evidence showing that the case was still not closed in 1960, when this action was commenced. At least three different investigations were made by the Trustees into the merits of appellant's claim for a pension. One was conducted in 1957, and a final one when this action was begun. Until a defense was interposed in this case, we cannot say that appellant's claim was completely repudiated. Until that time, the Trustees were giving continuing consideration to appellant's eligibility. On these undisputed facts, this action is not barred by the statute of limitations.

*Id.* at 750 (footnotes omitted). Thus, the D.C. Circuit held that the statute of limitations did not bar an equitable claim by a beneficiary against a trustee unless the trustee made a clear and continuing repudiation of the right of the beneficiary to enjoy the benefits of the trust.

The D.C. Circuit's holding in *Kosty* is consistent with the findings of other circuits that have construed the relevant statute of limitations in cases filed under ERISA, which federal courts have been directed to construe in light of the common law principles governing trusts.[4] For example, the Second Circuit has "consistently held that an ERISA cause of action accrues and the limitations period begins to run when a claim for benefits is clearly and unequivocally denied." *Miele v. Pension Plan of New York State Teamsters Conference Pension & Ret. Fund,* 72 F.Supp.2d 88, 98 (E.D.N.Y.1999); *see also Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan,* 698 F.2d 593, 598 (2d Cir.1983) ("A plaintiff's ERISA cause of action accrues, and the six-year limitations period begins to run, when there has been a repudiation by the beneficiary which is *clear* and made known to the beneficiaries") (emphasis in original) (citation and internal quotation marks omitted);

---

**4.** ERISA is the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101, *et seq.* For the Supreme Court's mandate to construe ERISA based on common law principles governing trusts, *see Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

*Tinley v. Gannett Co., Inc.*, 55 Fed. Appx. 74, 78 (3d Cir.2003) (same). Similarly, in *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62 (7th Cir.1996), a laid-off sheet metal worker filed suit under ERISA seeking the payment of pension funds that he claimed had been unlawfully denied. The Seventh Circuit stated that "[t]he principal issue before us is when Daill's cause of action accrued, *i.e.*, when the 10–year statute of limitations clock started ticking. Even when relying on an analogous state statute of limitations, as in this case, we look to federal common law for purposes of determining the accrual date of a cause of action under a federal statute such as ERISA." *Daill*, 100 F.3d at 65.[5] The court reversed the district court's award of summary judgment for the plaintiff, explaining that "the interests of pension funds and plan participants are better served by the consistent treatment of any claim or application for pension benefits so that a cause of action accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Id.* at 66.

None of the case law cited by defendants mandates a contrary conclusion by this Court. First, the cases cited from state courts are wholly concerned with the construction of state trust law, and therefore are not binding on this Court. Second, the cases that defendants cite that were brought under the Tucker Act or the Little Tucker Act are not on point because they involve claims for damages, not equitable claims for an accounting.[6] As this Court has previously indicated, the rules governing these two types of cases are not interchangeable. *See Cobell*, 30 F.Supp.2d at 40 ("Case law has long recognized the distinction between an action at law for damages-which are intended to provide a victim with monetary compensation for an injury to his person, property, or reputation-and an equitable action for specific relief-which may include an order providing for the recovery of specific monies.") (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 893, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988)) (internal punctuation omitted). None of these cases undermine the principle that the statute of limitations does not commence running for a beneficiary's equitable claim to enforce the obligations of the trustee until the trustee has repudiated the beneficiary's right to the benefits of the trust. It is true that the Federal Circuit appears to have adopted an exception to the rule that the statute of limitations does not run unless the trustee has repudiated the trust's existence in cases involving claims for damages that allege nonfeasance or misfeasance on the part of the trustee. *See, e.g., Cherokee Nation of Oklahoma v. United States*, 21 Cl.Ct. 565, 571 (1990). Because this unwarranted "exception" runs against the grain of fundamental trust law principles, however, it has

---

**5.** The court looked to the analogous state statute of limitations because the plaintiff had sought relief under 29 U.S.C. § 1132(a)(1)(B), authorizing civil actions to be brought by ERISA participants to recover benefits due to the participant under the plan. In such cases, courts are directed to apply the most analogous state limitations statute. By contrast, actions commenced under § 1132(a)(3) "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or to obtain other equitable relief

to redress such violations or to enforce any provisions of this subchapter or the terms of the plan" are governed by the six-year statute of limitations found in § 1113.

**6.** The Tucker Act, 28 U.S.C. § 1491, bestows exclusive jurisdiction upon the Court of Federal Claims over non-tort claims for damages against the United States for $10,000 or more. Appeals from the Court of Federal Claims proceed to the Federal Circuit.

apparently not been adopted in any other Circuit, and this Court will not do so now.

Third, and finally, none of the federal cases cited by defendants involving claims based in equity mandate a contrary conclusion by this Court. In *Gruby v. Brady*, 838 F.Supp. 820, 830–32 (S.D.N.Y.1993), the trustees of a pension fund proposed increases in monthly pension benefits in 1973, 1980, 1983, and 1986, without informing the plaintiffs that the fund was experiencing financial difficulties. In response to plaintiffs' ERISA claims for breach of fiduciary duty, the trustees moved to dismiss, asserting that the statute of limitations barred any such claims to the extent that they were based on payment increases that were made before 1986. The court first explained that "[w]hether any of plaintiffs' claims are time-barred depends on whether the Trustee–Defendants engaged in one 'continuous' violation or separate, 'repeated' breaches of duty." *Id.* at 830–31. Because the court concluded that each of the payment increases gave rise to separate causes of action for breach of fiduciary duty, it barred those causes of action that occurred prior to May 27, 1986. By contrast, in the present action, plaintiffs are not alleging that they have made a series of individual requests for accountings or transaction reports, and that such requests have been denied. Rather, when plaintiffs commenced the present suit, they sought a declaratory judgment of defendants' fiduciary obligations, including a finding that defendants were required to provide a complete historical accounting of the IIM accounts, because defendants have never conducted such an accounting during the life of the IIM trust. The situation in *Gruby* is therefore inapposite to the present situation. If the Court were to adopt the dichotomy used by the *Gruby* court, it would conclude that defendants have engaged in a single continuous violation of their fiduciary duties rather than separate, repeated breaches of duty, and therefore are not entitled to summary judgment on statute of limitations grounds.

Nor does *Littlewolf v. Hodel*, 681 F.Supp. 929 (D.D.C.1988), undermine the Court's conclusion. The issue presented in that case was whether the statute of limitations in the White Earth Reservation Land Settlement Act of 1985 was "unreasonable" for purposes of the Due Process Clause of the Fifth Amendment, not whether the United States, as trustee, was required to repudiate the existence of the trust before the applicable statute of limitations would run. And *Adams v. Hinchman*, 154 F.3d 420 (D.C.Cir.1998), involved neither trust principles nor claims for breach of fiduciary duty, but rather claims for back pay and overtime by federal employees. Nothing in the dicta cited by defendants from that case suggests that the D.C. Circuit was addressing anything but claims for back pay and overtime.

■ Based on the evidence presented in defendants' motion, including the statements of material fact alleged by defendants to be undisputed, the Court finds that defendants have neither repudiated the existence of the IIM trust nor repudiated plaintiffs' right to enjoy the benefits of the trust. Instead, defendants have consistently chosen the coward's route by failing to provide the IIM beneficiaries with the information that the beneficiaries were entitled to by law, while simultaneously insisting that they were fully complying with their fiduciary obligations to the beneficiaries. Having failed to persuade Congress to pass legislation that would cut off plaintiffs' claims with respect to all transactions that occurred prior to October 1, 1984, defendants presently invite the Court to make a ruling to the same effect. The Court declines defendants' invitation. Such a construction of

the statute of limitations would not only proceed down a path that Congress expressly rejected, it would also undermine the mandate of the D.C. Circuit's February 23, 2001 opinion in this case. Responding to the assertion that plaintiffs did not have a judicially-enforceable right to a complete historical accounting, the D.C. Circuit stated:

> Contrary to appellants' claims, Section 102 of the 1994 Act makes clear that the Interior Secretary owes IIM trust beneficiaries an accounting for "*all* funds held in trust by the United States for the benefit of an Indian tribe or an individual Indian which are deposited or invested pursuant to the Act of June 24, 1938." 25 U.S.C. § 4011(a) (emphasis added). "All funds" means *all funds*, irrespective of when they were deposited (or at least so long as they were deposited after the Act of June 24, 1938). Therefore, the 1994 Act reaffirms the government's preexisting fiduciary duty to perform a complete historical accounting of trust fund assets.... Appellants never explain how one can give a *fair* and *accurate* accounting of *all* accounts without first reconciling the accounts, taking into account past depos-

its, withdrawals, and accruals. Indeed, the government's own expert acknowledged that one could not determine an accurate account balance without confirming historical account balances.

*Cobell v. Norton*, 240 F.3d 1081, 1102 (D.C.Cir.2001) (emphasis in original). "All funds" still means *all funds*, regardless of when they were deposited. Defendants' arguments to the contrary simply provide further evidence of their craven hypocrisy: while insisting to the public that they are committed to reforming the Indian trust system, they are simultaneously doing everything in their power to dodge the trust responsibilities that have been bestowed upon them, and that both Congress and the courts have spelled out for them.

In sum, defendants have failed to provide credible evidence that, if uncontroverted, would entitle them to a directed verdict at trial that the relevant statute of limitations, 28 U.S.C. § 2401(a), bars any claims by plaintiffs for an accounting of IIM balances or transactions prior to October 1, 1984. Defendants have therefore failed to satisfy their burden of production on this issue, and the Court will deny their motion for partial summary judgment.[7]

---

7. Because the Court finds that plaintiffs' claims for an accounting for transactions before October 1, 1984 have not accrued, for purposes of 28 U.S.C. § 2401(a), it will be unnecessary to make any determination on the issues of equitable tolling and fraudulent concealment. The Court does note, however, that even if defendants had demonstrated that the claims in question had accrued prior to that date, plaintiffs have nevertheless presented solid arguments that the doctrines of equitable tolling and fraudulent concealment would prevent the application of the statute of limitations to bar claims that accrued before October 1, 1984.

Because these two doctrines are sometimes confused, it may be useful to provide a brief explanation of each doctrine. The doctrine of equitable tolling permits a plaintiff to avoid the bar of the limitations period if, despite all

due diligence, he is unable to obtain vital information bearing on the existence of his claim. *Currier v. Radio Free Europe / Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C.Cir. 1998). By contrast, to invoke the fraudulent concealment doctrine, a moving party must demonstrate (1) that the opposing party engaged in a course of conduct designed to conceal evidence of their alleged wrongdoing and (2) that the moving party was not placed on actual or constructive notice of that evidence, despite (3) its exercise of diligence. *Foltz v. U.S. News & World Report, Inc.*, 663 F.Supp. 1494, 1537 (D.D.C.1987), *aff'd*, 865 F.2d 364 (D.C.Cir.1989). The factual record in this case—including the facts alleged in defendants' summary judgment motion—demonstrates that defendants have engaged in a continuing effort to conceal relevant evidence of their mismanagement of the IIM

### D. Laches

Defendants also seek partial summary judgment that the laches doctrine bars plaintiffs' claims for an accounting of transactions that occurred before October 1, 1984. The equitable doctrine of laches applies in situations in which a plaintiff has unfairly delayed in bringing an action, resulting in prejudice to the defendant. *CarrAmerica Realty Corp. v. Kaidanow*, 321 F.3d 165, 171 (D.C.Cir.2003). The rationale for this doctrine is that "as claims become increasingly stale, pertinent evidence becomes lost; equitable boundaries blur as defendants invest capital and labor into their claimed property; and plaintiffs gain the unfair advantage of hindsight, while defendants suffer the disadvantage of an uncertain future outcome." *Id.* (citation omitted).

 In its November 5, 1999 memorandum opinion, this Court denied defendants' motion to dismiss based on the laches doctrine, explaining that "[i]n general, the time period for a laches analysis cannot begin to run until a repudiation of the trust has occurred and the plaintiffs have actual notice of it." *Cobell*, 30 F.Supp.2d at 45 (citing BOGERT & BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 964, at 73 (rev.2d ed.1985)). The Court explained, however, that defendants were free to reintroduce the laches argument at the summary judgment stage. As noted above, defendants have failed to demonstrate that a repudiation of the trust has occurred. Therefore, the Court will deny defendants' motion for partial summary judgment that the doctrine of laches bars plaintiffs' claims for an accounting with respect to transactions that occurred before October 1, 1984.

### III. CONCLUSION

Having examined the evidence presented by defendants in their motion for partial summary judgment, the Court concludes that defendants have failed to present evidence that, if uncontroverted, would entitle defendants to a directed verdict that the statute of limitations or the laches doctrine bars plaintiffs' claims for an accounting of balances or transactions before October 1, 1984. Therefore, defendants have failed to satisfy their burden of production, and the Court will deny their motion for partial summary judgment. It is therefore

ORDERED that defendants' motion for partial summary judgment regarding the statute of limitations and laches [1781–1] be, and hereby is, DENIED.

SO ORDERED.

---

trust, despite plaintiffs' numerous discovery requests for such information. Because of this repeated pattern of deception, even if plaintiffs' claims for an accounting for transactions prior to October 1, 1984 had accrued before that date, plaintiffs would probably be able to invoke either the equitable tolling doctrine or fraudulent concealment doctrine to avoid the running of the statute of limitations contained in 28 U.S.C. § 2401(a).